## ARTHUR LEVIN *v.* STATE OF MARYLAND

[No. 54, Initial Term, 1967.]

*Decided April 10, 1967.*

142

The cause was argued before ANDERSON, MORTON, and ORTH, JJ., and MACGILL, J., Chief Judge of the Fifth Judicial Circuit, specially assigned, and JENIFER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Gordon H. Levy* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Robert C. Murphy, former Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Frank De-Costa, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Appellant, owner and operator of the "Baltimore Book Bizarre" (sic), a book store located at 224 West Baltimore Street in Baltimore City, was convicted by the Criminal Court of Baltimore, of violating Code (1966 Cum. Supp.) Article 27, section 418 a, which makes it a misdemeanor for any person to "knowingly * * * sell * * * any lewd, obscene, or indecent * * * photograph." The subject matter of the prosecution was three sets of photographs, from which three photographs and the receipt for the purchase price were admitted in evidence without objection. The photographs, three to a set, were on the counter of the store. Two sets were purchased for $5.00 each and the third for $4.00 by a member of the Baltimore Police Department, Rackets Division. The photographs in evidence are of one type, each being of a young man, two being completely naked, the third wearing only an undershirt. Each man is distinguished by a large penis in full erection. In one photograph, the subject, in profile, is fondling his penis, in another the subject, in profile, is reclining on his back and in the third the subject is standing full face to the camera. Appellant concedes the photographs are utterly without redeeming social value, but urges that the State has not established that the other two elements set forth under the *Roth-Alberts* test of obscenity coalesce. *Roth v. United States,* 354 U. S. 476 (1957), reiterated in *Jacobellis v. Ohio,* 378 U. S. 184 (1964), and

summarized in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General* (the "Fanny Hill" decision), 383 U. S. 413, 16 L. Ed. 2d 1 (1966). These two elements are (a) the dominate theme of the material taken as a whole appeals to a prurient interest in sex, and (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters. The court denied a motion for judgment of acquittal at the conclusion of the State's case and the defense proffered no testimony. Appellant, in effect, contends:

i) The evidence was not legally sufficient to support the conviction.

ii) The statute under which appellant was charged and convicted is unconstitutional for failure to require *scienter*.

*i*

Embraced in the first contention are two questions presented by appellant:

a) Should the lower court have granted the appellant's motion for judgment of acquittal?

b) Did the lower court correctly apply the controlling law as set out in *Roth v. United States,* supra, as elaborated and in one respect adjusted by *Miskin v. New York,* 86 Sup. Ct. 958 (1966)?

To sustain the conviction under Code (1957), Article 27, Sec. 418 a, the words "lewd," "obscene," and "indecent" must be defined under the standards set forth in *Roth-Alberts* and the photographs must be found to be obscene by those standards. We feel that the Maryland Legislature intended, by its use of these words in the statute, what the words meant in prevailing leading legal thought. Since these cases were tried by the court sitting without a jury, we have the right to review them on both the law and evidence to determine whether in law the evidence was sufficient to sustain the conviction, though we may not set aside the verdict on the evidence unless it is clearly erroneous. Maryland Rule 1086 a; *Monfred v. State,* 226 Md. 312 (1961); *Yudkin v. State,* 229 Md. 223 (1962). However, we are mindful of our obligation to make a reflective,

independent judgment on the facts of the case and that *ordinarily* neither the judge who may sit in the lower court nor the judges of this Court would be qualified to determine whether the photographs fail to meet the standards laid down in *Roth-Alberts* without enlightening testimony. *John Sanza v. Maryland State Board of Censors*, 245 Md. 319, (1967). See also the dissenting opinion of Judge (now Chief Judge) Hammond in *Monfred v. State*, supra. But we feel that the photographs in the instant case, which are conceded to be without redeeming social value, are such as to which no proof, other than the viewing of them, is required to determine that they are, in fact, obscene. *Dunn v. Maryland Board of Censors*, 240 Md. 249 (1965). The exhibits of the allegedly obscene material speak for themselves and must in every case be perused and examined with care. We have done so and find them to be hard-core pornography. This does not mean that other competent evidence to show them to be *not* obscene should be excluded as irrelevant or immaterial. *Yudkin v. State*, supra. Chief Justice Warren, in the dissenting opinion in *Jacobellis v. Ohio*, supra, in which Justice Clark joined, observed that hard-core pornography is difficult to define. In the same case, Justice Potter Stewart, who feels that only hard-core pornography may be proscribed under the First Amendment, said that perhaps he could never intelligently describe the kinds of material embraced within the term but that he knows it when he sees it. Footnote 4 in the dissenting opinion of Judge Hammond in *Monfred v. State*, supra, sets forth the description of hard-core pornography given by the Solicitor General of the United States:

> "This is commercially produced material in obvious violation of present law * * *. There is no desire to portray the material in pseudo-scientific or 'arty' terms."

He quotes D. H. Lawrence who wrote in *Pornography and Obscenity in Sex Literature and Censorship* (1953):

> "But even I would censor genuine pornography, rigorously. It would not be very difficult. In the first

place, genuine pornography is almost always under-
world, it doesn't come into the open. In the second,
you can recognize it by the insult it offers, invariably,
to sex, and to the human spirit.

"Pornography is the attempt to insult sex, to do dirt
on it. This is unpardonable. Take the very lowest in-
stance, the picture postcard sold underhand, by the
underworld, in most cities. What I have seen of them
have been of an ugliness to make you cry. The insult
to the human body, the insult to a vital human rela-
tionship! Ugly and cheap they make the human nu-
dity, ugly and degraded they make the sexual act,
trivial and cheap and nasty."

It has also been said that hard-core pornography is material
which "focuses predominantly upon what is sexually morbid,
grossly perverse, and bizarre without any artistic or scientific
purpose or justification." *People v. Richmond County News,
Inc.,* 175 N. E. 2d 681, 686 (N. Y. 1961). Mere nudity, in
and of itself, is not obscene nor are sex and obscenity synony-
mous. *Sanza v. Maryland,* supra; *Monfred v. State,* supra. The
photographs in the instant case do not merely depict nude
males. They are more than vulgar, cheap, crude and in poor
taste. We feel that these photographs are one of the excep-
tional cases, considering the posture and position of the sub-
jects, the calculated emphasis on and highlighting of the genital
area with the penis in erection, the complete lack of caption
or text, the patent absence of any redeeming social value, so
as not only to speak for themselves, but scream for all to
hear that they are obscene. They go substantially beyond custo-
mary limits of candor and deviate from society's standards of
decency in the representation of the matters with which they
deal. They offer insult "to sex, and to the human spirit"; they
make human nudity ugly and cheap. They are not designed
to be a truthful description of the basic realities of life as the
individual experiences it; their main purpose is to stimulate
erotic response. It has been suggested that to be hard-core
pornography, there must be explicitly illustrated incidents of
sexual activity, normal or perverted, involving some "act".

Examples are given of the "comic books" specially drawn for the pornographic trade, and motion pictures showing "people of both sexes engaged in orgies which * * * include every form of sexual activity known, all of which are presented in a favorable light." We do not agree. We feel that the photographs in the instant case depict a sufficient "act", assuming such is necessary, to be flagrant erotica and render them hardcore pornography. We note in passing, that although the Supreme Court has not fully accepted the "variable obscenity" concept expressed by Chief Justice Warren in the concurring opinion in *Roth-Alberts* to the effect that the question of obscenity must turn, not on the material itself, but on the motives of the seller, the sales in the instant case were unquestionably commercial and that a variable obscenity test could have been applied. Cf. *Ginzburg v. United States,* 383 U. S. 463, 16 L. Ed. 2d 31 (1966).

Thus having made a reflective, independent appraisal that the photographs are obscene, we are unable to say that the trial court was in error in denying the motion for a judgment of acquittal or was clearly in error as to the evidence in convicting the appellant of "knowingly" selling the obscene photographs. Nor did the lower court reach the wrong conclusion as to the law. Maryland Rule 1086 a.

*ii*

Appellant's second contention is without merit. He alleges that the statute fails to require *scienter*. The 1960 amendment to the Maryland Code, Article 27, section 418 a, added the word "knowingly" and thus requires guilty knowledge. As it, in fact, requires *scienter,* it cannot be said to be unconstitutional for failure to require it.

Appellant also contends he did not know the material sold by him was obscene and could not have known until it was so adjudicated. The Court of Appeals said in *Sanza v. Maryland,* supra, that the term "obscene" is "not susceptible of definition, any more than is the loftier concept of due process of law, but it is an inherent part of our system of constitutional government that broad concepts take on definite meaning only as the ground covered by the concept is marked out case by case."

It is true that the term "obscene" is not precise, but lack of precision is not of itself offensive to the requirements of due process. The Constitution does not require impossible standards. All that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. We have noted that the test of obscenity is as summarized in the "Fanny Hill" decision and that the Maryland Legislature, in enacting the law, intended obscenity to mean the prevailing leading legal thought. The term, applied according to this standard, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries fairly to administer the law. The statute, applied according to this standard, does not offend constitutional safeguards against convictions based upon protected material, and does not fail to given men, in acting, adequate notice of what is prohibited. *Roth v. United States,* supra.

*Judgment affirmed.*
*Appellant to pay costs.*