**15192 THIRTEEN MILE RD., 4061 E. Eight Mile Rd., Plaintiffs,**

**v.**

**CITY OF WARREN, Defendant.**

**Civ. Nos. 83 CV 9030 PH, 83 CV 9078 PH.**

United States District Court, E.D. Michigan, S.D.

Aug. 8, 1984.

Stephen M. Taylor, Southfield, Mich., for plaintiffs.

David Dalenberg, Asst. City Atty., Warren, Mich., James I. DeGrazia, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This case raises the intractable problem of resolving the conflict between the interests of a municipality in planning community development through a zoning ordinance, and the First Amendment interests of businesses offering adult entertainment. The problem is exacerbated in the instant case by a lengthy and complex procedural history.

Plaintiff [1] is a Michigan corporation which acquired a leasehold interest in certain property located at 15192 Thirteen Mile Road, Warren, Michigan. Plaintiff is interested in establishing an adult bookstore at the Thirteen Mile Road address, and has challenged those sections of the Warren Zoning Ordinance which regulate adult bookstores. Plaintiff raised this challenge by moving for a preliminary injunction. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to U.S. Magistrate Harvey D. Walker to conduct a hearing on plaintiff's motion for preliminary injunction, and thereafter to file findings of fact, conclusions of law, and a recommendation of judgment. Magistrate Walker held a hearing on plaintiff's motion for preliminary injunction, and on September 20, 1983, filed a Memorandum Opinion and Recommendation setting forth findings of fact, conclusions of law, and a recommended resolution of plaintiff's motion for preliminary injunction.

In response to the Magistrate's recommendation, defendant filed a motion to dismiss, timely objections, and incorporated within the objections to the Magistrate's recommendation a motion for summary judgment. Moreover, the course of litigation since the Magistrate's recommendation has engendered numerous other motions. Thus, the Court has before it the following matters:

1. Plaintiff's motion to amend;

2. Defendant's motion to abstain;

3. Defendant's motion to dismiss;

4. Defendant's motion to disqualify Gregory Fischer Lord as plaintiff's attorney;

5. Plaintiff's motion to take notice of adjudicative fact;

6. Plaintiff's motion for preliminary injunction;

---

1. Although two plaintiffs are designated in the caption of the case, the Court will refer simply to plaintiff, for 4061 Eight Mile only recently entered the case through consolidation, and all the motions in the case were raised by 15192 Thirteen Mile Road.

7. Plaintiff's motion for summary judgment; and

8. Defendant's motion for summary judgment.

The Court will discuss the motions in the order listed above, but before addressing the motions, the Court must set forth the relevant facts. The Court's statement of the relevant facts is largely derived from U.S. Magistrate Harvey D. Walker's findings of fact, which the Court has reviewed de novo in light of the transcript of the hearing held before the Magistrate.[2] *Hill v. The Duriron Co. Inc.*, 656 F.2d 1208 (6th Cir.1981).

I. *Relevant Facts*

. Plaintiff is a Michigan corporation which acquired a leasehold interest in certain property located at 15192 Thirteen Mile Road, Warren, Michigan. Pamela Ramsey, the president and sole stockholder in plaintiff corporation, desires to establish a bookstore offering adult materials at the leased site. Plaintiff does not yet have any plan as to the exact proportion of adult materials that would be offered in the bookstore.

Plaintiff's leasehold is located in a C–1 zoned district in the City of Warren. Although a bookstore is permitted to locate in a C–1 zoned district, an adult bookstore may not. Section 14.02(c)1(a) defines adult bookstore as follows:

[C] ADULT BOOKSTORE: An establishment having a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Special Anatomical Areas," (as defined below), or an establishment with a segment or section devoted to the sale or display of such material.

To further clarify the definition of adult bookstore, the zoning ordinance defines "specified sexual activities" and "specified anatomical areas" in the following terms:

*Specified Sexual Activities. Specified Anatomical Areas:*

For the purposes of this section, "Specified Sexual Activities" is defined as follows:

(1) Human genitals in a state of sexual stimulation or arousal.

(2) Acts of human masturbation, sexual intercourse or sodomy.

(3) Fondling or other erotic touching of human genitals, pubic region, buttock or female breast.

And, "Specified Anatomical Areas" is defined as:

(1) Less than completely and opaquely covered:

(a) human genitals, pubic region,

(b) buttock, and

(c) female breast below a point immediately above the top of the areola.

(2) Human male genitals in a discernibly turgid state even if completely and opaquely covered.

Warren Zoning Ord. 1402(c)(1)(F).

The Warren zoning ordinance divides the city into eighteen zoning districts. An adult bookstore may locate in only four of those zones: General Business District (C–2), Wholesale and Intensive Business District (C–3), and Industrial Zones (M–1) and (M–2). To locate in any of these four zoning districts, an adult bookstore must obtain the special use approval of both the City Planning Commission and the Board of Zoning Appeals. The application for a special use approval must also be accompanied by a site plan application. The Warren zoning ordinance states that a special use may be permitted only if it is not injurious to the zoning district and surrounding areas, and is not contrary to "the spirit and purpose of the ordinances." (Warren Zoning Ord. 14.02).

---

**2.** During the transmittal of this case between the Magistrate's Office and the Court, the exhibits admitted at the preliminary injunction hearing were lost. Mr. Gregory Fischer Lord's office has provided duplicates of the exhibits admitted at the preliminary injunction hearing, and pursuant to a stipulation of the parties, the Court will consider these duplicates in reviewing this case.

In addition, the Planning Commission cannot approve the site plan of an adult bookstore if any of the following conditions are found to exist:

a) The site is located on other than a major thoroughfare, as designated in the Master Thoroughfare Plan.

b) The site is closer than 500 feet to the property line of an area zoned residential or a residential use.

c) The site is located closer than 1,000 feet to a site having an adult business designation under this section or closer than 1,000 feet to the property line of any church or private or public school. Warren Zoning Ord. 14.02(c)(2).

When reviewing a site plan, the Commission must also determine whether the particular use will have a "deleterious effect on the surrounding area." There is, however, a provision in the zoning ordinance permitting the Planning Commission to waive the spatial restrictions if 51% of the persons owning, residing, or doing business within 500 feet of the adult business, approve that use through a petition of notarized signatures.

The Warren Planning Commission is composed of fourteen citizens from the community who serve on a voluntary basis, while the Warren Board of Zoning Appeals is a nine-member body appointed by the City Council, and is also drawn from the community to serve on a voluntary basis. There is no time period established during which either of the two groups must complete their review processes.

A City Center District is also located in the City of Warren in an area immediately surrounding a local government complex. The City Center area is in a C–2 district, and in addition to meeting all the other zoning requirements of a C–2 district, any business that wishes to locate in the City Center area must obtain the approval of the City Council.

The legislative history of zoning control of adult bookstores in Warren is notably sparse. The first proposal was broached by Warren City Councilman Austin at a Warren City Council meeting held on February 27, 1973. At that meeting, Councilman Austin suggested that the City Attorney's Office research the possibility of a regulatory scheme to keep various types of "adult" activities out of Warren. City Planner John Daily testified that the proposed ordinance was held in abeyance while the courts reviewed the case of *Young v. American Mini-Theatres*.

Thus, the first attempted regulation of adult bookstores by the City of Warren was Ordinance No. 30–559, an amendment to Section 14.02, passed by the City Council on May 9, 1978. This amendment modified Section 14.02 by requiring, in addition to the earlier requirements of Section 14.02, spatial limitations on adult uses and the consent of 51% of the surrounding landowners before "special use" approval could be granted. A second amendment to Section 14.02, Ordinance No. 30–566, was passed by the City on August 22, 1978. This amendment made only minor modifications to Ordinance 30–559.

Ordinance No. 30–573 was passed by the Warren City Council on December 27, 1978. This ordinance rescinded the 51% requirement contained in the earlier ordinances, and added a new clause that allowed for the waiving of the remaining spatial criteria if the applicant acquired the signatures of 51% of the surrounding landowners consenting to such waiver.

None of the ordinances passed by the City of Warren regulating adult bookstores have any factual findings or statement of purpose in their text. Moreover, no evidence was submitted showing that the City Council ever considered testimony or documents detailing the benefits of the dispersal type of zoning which was adopted. Defendant did represent at the preliminary injunction hearing that it would commission future studies to justify the ordinance.

There are 85 sites currently available in the City of Warren which satisfy the spatial requirements of the zoning ordinance. Mr. Mark Toth, a licensed commercial real estate broker, testified that he had inspected the 85 sites. Mr. Toth stated that most

of the 85 sites were not commercially feasible for the operation of an adult bookstore. The commercial impracticability of some sites, such as the site on the land occupied by the General Motors Technical Center, are obvious. As for the other sites, the difficulties are not quickly apparent. For example, the site with Sidwell Number 13–03–352–004 is a vacant lot on the corner of Mound and Thirteen-Mile Roads. Mr. Toth testified that the site is not feasible because building costs would be prohibitive for a small retailer like an adult bookstore. The site with Sidwell Number 13–04–226–014 is a small vacant building located at 7150 Fourteen-Mile Road. Mr. Toth stated that this was not a feasible site because the building required renovation, and any sale or lease price would be excessive for a small retailer. Similar explanations of commercial impracticability were offered for sites at Sidwell Numbers 13–04–226–016, 13–24–354–001, 13–25–102–008, 13–25–102–011, and 13–35–201–008. The Court presumes that such explanations would also apply to vacant lots at Sidwell Numbers 13–06–151–005, 13–10–151–020, and 13–10–301–001, as well as the small retail outlet at 13–10–151–015.

Ms. Ramsey testified that she did not attempt to open her business because she was apprehensive about being charged with a criminal violation for failing to comply with the provisions of Section 14.02.

## II. *Plaintiff's Motion to Amend*

After the Magistrate's recommendation, defendant moved to dismiss the complaint, asserting as one basis that plaintiff failed to allege sufficient facts to show standing. A similar argument was raised in defendant's response to plaintiff's motion for summary judgment. Plaintiff proposes to amend its complaint to reflect certain evidence which was produced without objection at the preliminary injunction hearing. Specifically, plaintiff wishes to allege that plaintiff has yet to determine what portion of its stock in trade will be adult books, and that plaintiff wishes to avoid the penalties which would flow from

a violation of the ordinance. Plaintiff also desires to allege that the language of the ordinance is vague and overbroad.

Given the liberal amendment policies stated in FR.Civ.P. 15, and because an amendment would not prejudice defendant, the Court hereby GRANTS plaintiff's motion to amend its complaint. For purposes of this opinion, the Court will decide all motions in light of the allegations set forth in plaintiff's proposed amended complaint filed on November 16, 1983. This procedure works no injustice on the defendant, for the proposed amended complaint merely conforms the pleadings to the proofs submitted at the preliminary injunction hearing.

In addition, the Court will consider plaintiff's proposed amended complaint as a properly filed amended complaint, as of the date of this opinion. Defendant must respond within the appropriate time limits.

## III. *Defendant's Motion to Abstain*

Defendant moves for abstention on two grounds. First, defendant contends that abstention is required under the doctrine enunciated in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Pullman,* the Supreme Court held that abstention may be appropriate where the resolution of uncertain state law issues could moot a federal constitutional issue, or cause it to be presented in a different posture. *ADA–Cascade Watch Co. Inc. v. Cascade Resource Recovery Inc.,* 720 F.2d 897 (6th Cir.1983). Defendant has not identified any uncertain state law issues which would require abstention under *Pullman.*

Defendant's second argument is that the Court should abstain because this case is analogous to *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Colorado River* was the case where the Supreme Court first held that a U.S. District Court may dismiss a federal suit due to the presence of a concurrent state proceeding. Yet the Supreme Court was careful to emphasize the extraordinary

circumstances under which a District Court could abstain because of a concurrent state proceeding, stating the following test:

> In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal. *Id.* at 818–819, 96 S.Ct. at 1247.

The subsequent Supreme Court decision of *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) appeared to expand the narrow terms of *Colorado River.* Indeed, this Court followed this expanded interpretation when it issued an order abstaining in *Michigan Diversified Business Corp. v. City of Warren,* civil no: 81–30097 (A copy of the opinion is attached to defendant's brief in support of defendant's motion to abstain.) Since the *Calvert Fire Insurance* case, the Supreme Court has reanalyzed the approach of *Colorado River,* and limited that doctrine only to the extraordinary situations which engendered it. *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The *Cone* case discusses abstention and reaffirms the language of *Colorado River* dictating a strict balancing of factors which determine abstention. The *Cone Hospital* opinion also places emphasis on the fact that *Colorado River* involved the effect of the McCarran Amendment, 43 U.S.C. § 666, and the Amendment's waiver of the government's sovereign immunity to permit the joinder of the United States in state-court suits for the adjudication of water rights.

In the instant case, most factors militate against abstention under *Colorado River,*

for the federal forum is not inconvenient, there is no threat of piecemeal litigation, the plaintiff does not consent to state jurisdiction, and there is no federal statute directing this litigation towards resolution in state court.

Accordingly, defendant's motion to abstain is hereby DENIED.

## IV. *Defendant's Motion to Dismiss*

Defendant attacks plaintiff's complaint on the grounds that it fails to allege sufficient facts showing what steps plaintiff took to commence business, and how defendant's zoning ordinance harms plaintiff. Defendant's motion to dismiss was filed after the hearing on the motion for preliminary injunction and the Magistrate's recommendation for disposition of the motion for preliminary injunction. The Court will therefore consider the plaintiff's amended complaint in ruling on this motion, since the amended complaint only conforms the pleadings to the proofs submitted during the hearing on the preliminary injunction.

In considering a motion to dismiss for failure to state a cause of action, the complaint is construed favorably to the pleader and its allegations are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The test for measuring the sufficiency of plaintiff's complaint was set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), where the Supreme Court held:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.

As the Sixth Circuit has recognized, this standard is to be strictly applied in civil rights actions:

> Dismissals of complaints under the civil rights statutes are scrutinized with special care. A Complaint need not set down in detail all the particulars of a

plaintiff's claim against a defendant. Rule 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief..." FR.Civ.P. 8(a)(2). All a complaint need to do is to afford the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." [cites omitted] *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976).

■ Given the standard of review, the Court finds that plaintiff's complaint sets forth the impact of the ordinance on plaintiff's proposed business operation. Such allegations are sufficient, for in cases presenting First Amendment problems, the plaintiff may challenge a statute whether or not plaintiff's conduct could be proscribed by a properly drawn statute, and whether or not plaintiff applied for a license. *Entertainment Concepts Inc. III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). Accordingly, defendant's motion to dismiss is DENIED.

## V. *Defendant's Motion to Disqualify Gregory Fischer Lord as Plaintiff's Attorney*

■ Defendant contends that Gregory Fischer Lord should be disqualified as plaintiff's counsel because he will most likely be called as a witness during the trial of the instant case. The possibility of Mr. Lord appearing as a witness derives from the legal work he performed in obtaining plaintiff's leasehold, and the difficulties which arose between Mr. Lord and the Mayor of Warren, as detailed in *The Macomb Daily* in September and October of 1983.

Subsequent to defendant's motion to disqualify, there was a substitution of counsel, with Mr. Stephen Taylor replacing Mr. Lord. Defendant's motion to disqualify Gregory Fischer Lord as plaintiff's attorney is therefore DENIED AS MOOT.

## VI. *Plaintiff's Motion to Take Notice of Adjudicative Facts*

■ Plaintiff requests that the Court take judicial notice that:

(A) the *Book-of-the-Month Club News* is published by the Book-of-the-Month Club, Inc. of Camp Hill, Pennsylvania, and (B) that the July, 1983 edition of the *Book-of-the Month Club News* offers to its customers the following book: *A Child is Born* by Lennart Nilsson, with this offering being made at Page 26 of the July 1983 edition of the *Book-of-the-Month Club News.*

Although judicial notice may be taken at any point in the proceedings, the Court declines to take judicial notice of the requested facts. The Court believes that these facts are neither generally known within the territorial jurisdiction of the trial court, nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Thus, plaintiff's motion to take notice of adjudicative facts is hereby DENIED.

## VII. *Plaintiff's Motion for Preliminary Injunction*

Plaintiff challenges defendant's zoning ordinance regulation of adult bookstores on the following three grounds:

A. The zoning ordinance is void for vagueness and overbroad;

B. The zoning ordinance is unconstitutional because there is an insufficient factual justification for the regulation of adult entertainment facilities; and

C. The zoning ordinance is unconstitutional because it effectively prohibits any adult bookstores from locating in the City of Warren.

The Magistrate did not address the issue of the sufficiency of the factual justification or the question of whether the ordinance acted to prohibit adult bookstores from locating in Warren. Rather, the Magistrate addressed only the question of vagueness, and found that the ordinance was, in fact, vague. The Magistrate therefore recommended that the Court issue a preliminary injunction, enjoining the City of Warren from enforcing the provisions ·of Section

14.02(c) of the Warren zoning ordinance against the plaintiff. Upon consideration, the Court rejects the Magistrate's recommendation. The Court will discuss each of the challenges in the order listed above.

### A. Vagueness and Overbreadth

 Plaintiff challenges the Warren zoning ordinance's definition of an adult bookstore because that definition uses the terms "substantial or significant portion" of its stock in trade when specifying what types of bookstores are adult bookstores. The Court is of the opinion that this definition is reasonably specific and precise, "bearing in mind that unavoidable imprecision is not fatal and celestial precision is not necessary." *Hart Book Stores, Inc. v. Edmisten,* 612 F.2d 821, 833 (4th Cir.1979), *cert. denied* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980). The language of the Warren ordinance is derived from the language found in the Detroit ordinance upheld in *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Although the Supreme Court did not address the vagueness issue in *Young,* similar language was found to be sufficiently precise in *Hart Book Stores, Inc. v. Edmisten, supra.* *See also Nortown Theatre Incorporated v. Gribbs,* 373 F.Supp. 363 (E.D.Mi.1974), *rev'd sub nom American Mini Theatres Inc. v. Gribbs,* 518 F.2d 1014 (6th Cir.1975), *rev'd sub nom Young v. American Mini Theatres Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Moreover, each term is "readily subject to a narrowing construction by the state courts." *Young, supra,* 427 U.S. at 61, 96 S.Ct. at 2448.

It is a logical possibility for a statute to be precise in language, yet overbroad. A challenge on the basis of overbreadth raises two questions: whether the language of the statute reaches too broadly and proscribes protected conduct, and whether too much discretion is vested in the officials who administer the statute. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The Court finds that the language of the Warren zoning ordinance is not substantially overbroad, but will defer addressing the question of excessive administrative discretion until later in this opinion.

In summary, the Court will not invalidate the Warren zoning ordinance on vagueness or overbreadth grounds.

### B. The Factual Justification of the Zoning Ordinance

 It is clear that if a zoning ordinance regulating adult bookstores is to be upheld as constitutional, the local government must factually justify its need to regulate adult bookstores. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). There is no requirement, however, for a city to conduct its own research in this area. In fact, the City need not await deterioration in order to act, and is entitled to rely on the experience and findings of other legislative bodies as a basis for action. *C.L.R. Corp. v. Henline,* 702 F.2d 637 (6th Cir.1983); *Genusa v. City of Peoria,* 619 F.2d 1203 (7th Cir.1980).

 At the preliminary injunction hearing, defendant offered to conduct surveys and research to justify the zoning ordinance. Such after the fact research is irrelevant, for the question under *Young* is what the legislature considered when enacting the ordinance. Nevertheless, there is no evidence that the Warren City Council enacted the ordinance in response to the proposed opening of an adult entertainment facility. The evidence does show that the Warren ordinance was held under advisement for a lengthy period of time while the courts considered the validity of the Detroit zoning ordinance in *Young v. American Mini-Theatres.* Indeed, to a substantial degree, the Warren ordinance resembles the ordinance approved in *Young.* The Court believes that the Warren City Council's reliance on the Detroit experience is a sufficient factual justification for the ordinance.

### C. The Zoning Ordinance as a Prohibition

 There are 85 sites in the City of Warren which satisfy the distance require-

156

ments of the zoning ordinance. Mr. Toth testified that many of the 85 sites were not commercially practicable. It would be unconstitutional for a municipality to zone adult uses into swamps, warehouses, and shipyards, where there are few access roads, and the locations are poorly lit and perhaps unsafe. *Basiardanes v. City of Galveston*, 682 F.2d 1203 (5th Cir.1982). The evidence in this case does not show a deliberate effort to zone the adult bookstore into a set of commercially impracticable sites. The 85 sites which satisfy the distance requirements of the ordinance represent a wide variety of locations. The fact that plaintiff may not be able to afford the renovation or construction of certain buildings does not persuade the Court of the invalidity of the ordinance, for the Court does not believe the City is required to provide sites which assure the commercial success of an adult bookstore. The distance requirements of the zoning ordinance are not prohibitory, and are therefore constitutional. *Young v. American Mini-Theatres Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

■■■ The application procedure for a special land use permit and site plan approval leaves an improper degree of discretion in the local officials. *Entertainment Concepts Inc. III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980), *cert. denied* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). It is instructive that the ordinance approved in *Young v. American Mini-Theatres Inc.*, *supra*, did not contain a special land use permit procedure. In the instant case, the lack of time limits governing the Commission and the Board of Zoning Appeals' decision, and the indefinite general standards guiding the Commission and Board's discretion, raise the possibility that local officials could effectively prohibit any adult entertainment facility. For there to be an effective permit requirement, a municipality must provide narrowly drawn, objective, reasonable, and definite standards to guide the administering officials. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969).

■■■ In contrast, the Court does not find that the discretion vested in various bodies for approving the special uses in the City Center District is unconstitutional, since the City needs the ability to require special permits for a small area of historical or cultural importance to the community.

Therefore, the Court finds unconstitutional the special land use procedure and site plan review procedure described in Warren Zoning Ordinance Section 14.02, as it applies to adult bookstores which do not locate in the City Center District. Given that this permit procedure is the only unconstitutional aspect of defendant's zoning ordinance, the Court must determine if it is proper to sever that requirement from the rest of defendant's zoning ordinance. The question of severability turns on a determination of legislative intent. *Champlin Refining Company v. Corporation Commission*, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932). In the instant case, there is a severability clause which provides that "If any part, sentence, paragraph, section or clause is adjudged unconstitutional or invalid, it is hereby provided that the remainder of the ordinance shall not be affected thereby." (Article XXVI, Warren Zoning Ordinance.)

Because the severability clause is such a strong indication of legislative intent, the Court finds that the zoning ordinance does stand alone if the special land use permit and site plan review procedure described in Warren Zoning Ordinance Section 14.02, as it applies to adult bookstores which are not located in the City Center District, is severable from the rest of the ordinance. The effect of this severance would be that outside the City Center District, an adult bookstore could locate as of right only in C–2, C–3, M–1 and M–2 zones, and only so long as none of the following conditions are found to exist:

(a) The site is located on other than a major thoroughfare, as designated in the Master Thoroughfare Plan.

(b) The site is closer than 500 feet to the property line of an area zoned residential or a residential use.

(c) The site is located closer than 1,000 feet to a site having an adult business designation under this section or closer than 1,000 feet to the property line of any church or private or public school.

These spatial restrictions may also be waived if 51% of the persons owning, residing, or doing business within 500 feet of the adult business approve that use through a petition of notarized signatures.

The standards for issuing a preliminary injunction are delineated in *Mason County Medical Assoc. v. Knebel*, 563 F.2d 256 (6th Cir.1977). The Court finds that plaintiff has satisfactorily shown the existence of the factors which are necessary for the issuance of a preliminary injunction enjoining the defendant from enforcing the special land use procedure and site plan review procedure described in Warren Zoning Ordinance Section 14.02 as it applies to adult bookstores which are not located in the City Center District. Accordingly, the plaintiff's motion for preliminary injunction is GRANTED IN PART, and it is HEREBY ORDERED that the defendant, City of Warren, be enjoined and restrained from enforcing the special land use procedure and site plan review procedure described in Warren Zoning Ordinance Section 14.02, as it applies to adult bookstores which are not in the City Center District, pending a full adjudication on the merits. The effect of this injunction on the Warren Zoning Ordinance and its regulation of adult bookstores is described in the preceding paragraph. In all other respects, the motion for preliminary injunction is DENIED.

## VIII. *Plaintiff's and Defendant's Motion for Summary Judgment*

The parties' motions for summary judgment are framed in response to the issues raised by the Magistrate's recommendation. The Court's present opinion has placed this case in a substantially different legal context, and the Court will defer ruling on the respective motions for summary judgment. The Court directs the parties to file supplemental motions for summary judgment accompanied by briefs within 30 days of this opinion. Each party will then have 30 days to respond to the opponent's motion for summary judgment.

## IX. *Conclusion*

Accordingly, for the reasons stated, the Court rules as follows:

1. Plaintiff's motion to amend is GRANTED;

2. Defendant's motion to abstain is DENIED;

3. Defendant's motion to dismiss is DENIED;

4. Defendant's motion to disqualify Gregory Fischer Lord as plaintiff's attorney is DENIED AS MOOT;

5. Plaintiff's motion to take notice of adjudicative fact is DENIED;

6. Plaintiff's motion for preliminary injunction is GRANTED IN PART and DENIED IN PART;

7. Plaintiff's motion for summary judgment is DEFERRED; and

8. Defendant's motion for summary judgment is DEFERRED.

The terms of the preliminary injunction are set forth in Section VII of this opinion.

IT IS SO ORDERED.