519 A.2d 206

**5297 PULASKI HIGHWAY, INC.**

v.

**TOWN OF PERRYVILLE.**

No. 379, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Jan. 8, 1987.

Howard J. Schulman of Baltimore, for appellant.

Dwight E. Thomey of Elkton, for appellee.

Submitted before GILBERT, C.J., and KARWACKI and ROBERT M. BELL, JJ.

GILBERT, Chief Judge.

This is the first appeal this Court has encountered in which the validity of a zoning ordinance has been attacked on First Amendment grounds. The ordinance is alleged to violate the First Amendment's mandate that "Congress shall make no law ... abridging the freedom of speech, or of the press...." Inasmuch as that amendment has been made applicable to the States through the Due Process Clause of the Fourteenth Amendment, it is now before us. *Edward v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Young v. American Mini Theatres,* 427 U.S. 50, 52, 96 S.Ct. 2440, 2443, 49 L.Ed.2d 310 (1976).

### The Facts

The Commissioners of the Town of Perryville enacted an amendment to the town's zoning ordinance to provide:

> "*Adult Bookstore/Adult Entertainment Center* shall be restricted to C–2 zone only, provided that no such use may be permitted within 1,800 feet of the boundary of the property upon which sets any church, school, hospital, or other similar institution for human care."

Those two enterprises are permitted in C–2 zones if the applicant satisfies the town's Board of Appeals with respect to thirteen hereinafter listed criteria.

5297 Pulaski Highway, Inc., operates Treasure Lingerie and Gift Shop, a retail store selling women's lingerie and associated items. The shop, we are informed, is divided into two sections. In the forward part lingerie is displayed and sold. The back portion contains an assortment of "adult" books and magazines.[1]

---

1. Among those offered for sale at 5297 were Virgin Victims; Easy to Get Nymphet; Lesbian Lusts Magazine; Run No More; Drawings by

Kay Smith[2] in July 1984 made application on behalf of 5297 corporation for a zoning occupancy permit to operate a "lingerie shop." That application was filed approximately four months after the adoption of the ordinance involved in this appeal. No mention of an "adult bookstore" appears anywhere in the application for the "lingerie shop."

The Town of Perryville filed a complaint in the Circuit Court for Cecil County in which the town sought an injunction against the selling at 5297 Pulaski Highway of anything "other than woman's [sic] lingerie and associated woman's [sic] clothing." Among the defenses asserted by 5297 were that "[o]rdinance 84–1 of the Town of Perryville is on its face ... [violative] of ... the First and Fourteenth Amendments to the Constitution of the United States...." The chancellor thought and held otherwise. The trial court further determined that the books and magazines were obscene. As a result of the circuit court's findings and holdings, the 5297 corporation was "enjoined from selling any items which are the subject of this suit other than women's lingerie ... unless or until ... a conditional use permit [is obtained]...."

In this Court 5297 asserts that the trial court erred in not holding the Perryville ordinance unconstitutional and in finding that the books and magazines were obscene.

---

Winchester of New York, including a S/M Novelette, "Weekend in Carolina"; Chic Magazine, July 1977; Chic Magazine, August 1977; English Penthouse, Vol. 18, No. 8; Sweet Dreams; Just New Door; Playbirds Magazine, No. 85; Genesis Magazine, June 1980; Playbirds Continental Magazine, No. 37; Velvet Magazine, February 1984; Tux Magazine, May 1984; Nugget Magazine, May 1983; Cheri Magazine, Volume 9, No. 1; Rustler For Men Magazine, Volume 8, No. 11; Exclusive Magazine, Volume 4, No. 6; High Society Magazine, November 1984; New National News Magazine, No. 67.

**2.** Kay Smith, originally a party to this matter, died during its pendency in the Circuit Court for Cecil County. 5297 Pulaski Highway, Inc., remains as the sole appellant.

### Facial Constitutionality

■ The circuit court held that Perryville Ordinance 84–1 was constitutional inasmuch as the Commissioners of the Town of Perryville articulated a reasoned and significant basis for the ordinance.

We have not been directed to, nor have we found, any Maryland appellate decision addressing a challenge to a zoning ordinance on the ground that it violated the First and Fourteenth Amendments to the Constitution of the United States. The Supreme Court and other federal court decisions provide us, however, with a plethora of authority.

The most recent Supreme Court decision interpreting First Amendment mandates with respect to zoning ordinances is *City of Renton v. Playtime Theatres, Inc.,* —— U.S. ——, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). *Renton* was concerned with theatre owners who intended to exhibit adult films in violation of an ordinance which proscribed the location of adult motion picture theatres within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. Playtime Theatres, the owner of two adult motion picture establishments, sought an injunction against enforcement of the ordinance. Additionally, Playtime prayed that the Federal District Court declare the ordinance violative of the theatre's First and Fourteenth Amendment rights. The Supreme Court upheld the ordinance as a valid governmental response to the serious problems created by adult theatres. In so holding, the Court relied substantially on its earlier decision in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, *supra.*

Justice (now Chief Justice) Rehnquist, writing for the majority, stated in *Renton* that because the ordinance did not altogether ban adult theatres it was a valid "time, place and manner regulation," rather than a restriction on the content of speech. Speaking through Justice Rehnquist, the Court said, "[C]ontent-neutral time, place and manner regulations are acceptable so long as they are designed to

serve a substantial government interest and do not unreasonably limit alternative avenues of communication." 106 S.Ct. 925 at 928. The Renton City Council's predominate concerns, the Court opined, were the secondary effects of adult theatres on the surrounding community, rather than the content of the films. The Court declared the ordinance a valid content-neutral time, place and manner regulation of protected speech.

Similarly in *Young v. American Mini Theatres, supra,* the Court turned back a challenge to an ordinance that prohibited placing an adult movie theatre within 1,000 feet of any other two regulated uses including adult entertainment centers, liquor stores, and hotels. Speaking through Justice Stevens, the Court held that Detroit's efforts to avoid a concentration of adult-oriented theatres in a specified area, so as to prevent urban blight and crime, was a legitimate state interest. The ordinance in *Young v. American Mini Theatres,* like that in *Renton,* did not completely eliminate dissemination of sexually explicit materials.

The concern of the Perryville Town Commissioners, in the case *sub judice,* is in the secondary effects that unregulated adult bookstores would have on the community, not the suppressing of speech embodied in the inventory of adult bookstores.

The ordinance here under attack declares that it seeks to protect and "promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity or general welfare."

The record contains minutes from community meetings during which the townspeople voiced their concern with problems that unregulated bookstores would create relative to safety, adequacy of public facilities, traffic, and the diminution of property values.

We think the record supports Perryville's assertion that Ordinance 84–1 was designed to serve a substantial government interest. "[A town's] interest in attempting to preserve the quality of urban life is one that must be accorded

high respect." *Young v. American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. 2440, 49 L.Ed.2d 310.

The majority of the Court in *City of Renton, supra*, said: "The First Amendment does not require a city, *before enacting such an ordinance* [as that of Perryville] to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." 106 S.Ct. 925 at 931 (emphasis added). The *Renton* Court concluded that the city had not used "the power to zone as a pretext for suppressing expression" and that, instead, the city had sought to make some areas available for adult theatres and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theatres from locating in other areas. *Id.* at 932.

The record does not reflect that Perryville enacted Ordinance 84–1 as a pretext to suppression of protected expression. Rather in the interest of preserving the general welfare of the community, the town established a procedure whereby adult bookstores are permitted as conditional uses in certain areas.

Cities are free to regulate adult theatres and bookstores by either dispersing them or concentrating them in a particular area. *City of Renton v. Playtime Theatres, Inc.*, 106 S.Ct. 925 at 931. The town "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." 106 S.Ct. 925, citing *American Mini Theatres, supra*, 427 U.S. at 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (plurality opinion).

The record before us in the instant case indicates clearly that Perryville Ordinance 84–1 was enacted "in response to the ... growth in the number of ... establishments" selling adult books and magazines. The ordinance does not, as we have said, ban adult book stores. It confines their operation to certain proscribed zones and, to avoid a proliferation of those establishments with a resulting possible deleteri-

ous effect on the area, mandates they be a conditional use, i.e., one for which permission to operate may only be conferred if specified criteria are satisfied.

Perryville Ordinance No. 84–1 is facially predicated upon a fundamental governmental interest in protecting the general welfare of the community. Adult bookstores are regulated, not proscribed. The ordinance was not directed toward the suppression of speech.

### Overbreadth and Vagueness

■ The Perryville Zoning Ordinance § 7A, "Conditional Uses," provides in pertinent part:

"No conditional use shall be authorized unless the Board finds in each specific case that the establishment, maintenance, or operation of the conditional use from the evidence produced at the public hearing meets the standards set forth in this section. The applicant for a conditional use shall have the burden of proof, which shall include the burden of going forward with the evidence and the burden of persuasion on all questions of fact which are to be determined by the Board.

As a further guide to the Board's decision upon the facts of each case, they shall give consideration to the following, where appropriate:

1. The nature of the proposed site, including its size and shape and the proposed size, shape, and arrangement of structures

2. Traffic conditions including the resulting traffic patterns

3. The nature of the surrounding area and the extent to which the proposed use might impair its present and future development

4. The proximity of dwellings, churches, schools, public structures, and other places of public gatherings

5. The probable effect of the proposed use upon the peaceful enjoyment of people in their homes

6. Facilities for sewers, water, schools, transportation, and other services, and the ability of the County to supply such services

7. The limitations of fire-fighting and rescue equipment, and the means of access for fire and police protection

8. The preservation of cultural and historic landmarks and trees

9. The probable effect of noise, vibration, smoke and particulate matter, toxic matter, odorous matter, fire and explosion hazards, or glare upon the uses of surrounding properties

10. The purpose and intent of this Ordinance as set forth in its other sections

11. The most appropriate use of land and structure

12. The conservation of property values

13. The contribution, if any, such proposed use, building or addition would make toward the deterioration of areas and neighborhoods."

The trial court, relying in part on *15192 Thirteen Mile Road v. City of Warren*, 593 F.Supp. 147 (1984),[3] held that the Perryville ordinance did not confer unbridled discretion upon the Board of Zoning Appeals.

*15192 Thirteen Mile Road v. City of Warren* was a case somewhat similar to that before us. There, a federal district court upheld a City of Warren zoning ordinance as generally constitutional but struck a section of the ordinance which required that adult bookstores apply for a conditional use permit. The application procedures, the district court said, left an improper degree of discretion in the local officials. The court reasoned that the lack of time limits in which the City Planning Commission and the Board of Zoning Appeals had to make a decision, together with the

---

3. We observe that the definitions of "Adult Bookstore" and "Specified Sexual Activities" as well as "Specified Anatomical Areas" in the City of Warren ordinance and those in the Perryville ordinance are remarkably similar.

indefinite general standards guiding the Commission and the Board, made the ordinance too broad. The lack of definitions raised the possibility that local officials could effectively prohibit any adult entertainment facility by simply holding the case *sub curia* indefinitely. In short, the Commission or Board of Appeals could thwart the process by not deciding the matter.

> "For there to be an effective permit requirement, a municipality must provide narrowly drawn, objective, reasonable, and definite standards to guide the administering officials."

593 F.Supp. at 156.

The Perryville ordinance does provide the definite objective guidelines which the zoning officials must apply when determining whether to grant the conditional use.

The ordinance requires that the Board of Appeals "shall decide the appeal within fifteen (15) days from the time of hearing." [4] Additionally, the ordinance articulates thirteen criteria as guidelines for the board. Section 10(2) of the Perryville zoning ordinance establishes further guidelines with respect to procedural protections such as notice and a right to be heard on the issue of conditional use. We think

---

4. The Perryville Zoning Ordinance § 9(2) provides a time frame for hearings and disposition of zoning appeals.

 "The Board of Appeals shall fix a reasonable time for the hearing of appeal, give public notice thereof as well as due notice to the parties in interest, and hold the public hearing within thirty (30) days from the date of filing of the notice of appeal, but failure of the Board of Appeals to hold a hearing within thirty (30) days shall not prejudice either the person aggrieved or any party or persons opposed to such appeal being granted. At least fifteen (15) days notice of the time and place of such hearing shall be published in a paper of general circulation in the Town and by posting the property. At the hearing, any party may appear in person or by agent or attorney. The Board shall then decide the appeal within fifteen (15) days from the time of hearing, but failure of the Board to so decide within fifteen (15) days shall not prejudice either party."

 A failure on the part of the Board to decide the appeal within a reasonable period after the expiration of the fifteen (15) day period specified in the ordinance might result in the application for and issuance of a writ of mandamus.

the guidelines in the Perryville ordinance are sufficient in number and definitiveness to overcome the district court's concern in *15192 Thirteen Mile Road*.[5] In § 19B of the Perryville zoning ordinance, "Adult Bookstore/Adult Entertainment Center" is defined as:

"An establishment, the principal use of which is to offer for sale or viewing books, magazines, printed material, films, tapes, peep shows and live acts which depict, describe or relate to 'Specified Sexual Activities' or "Specified Anatomical Areas" (as defined below) or an establishment with a segment or section devoted to the sale or display of such material.",

According to the ordinance "Specified Sexual Activities" are:

"(1) Human Genitals in a state of sexual stimulation or arousal;

(2) Acts of human masturbation, sexual intercourse or sodomy;

(3) Fondling or other erotic touching of human genitals, pubic region, buttock or female breast."

"Specified Anatomical Areas" mean:

"(1) Less than completely and opaquely covered:

(a) human genitals, pubic region,

(b) buttock, and

(c) female breast below a point immediately above the top of the areola; and

(2) Human male genitals in a discernibly turgid state, even if completely and opaquely covered."[6]

The definitions employed by Perryville in § 19B narrowly define "Adult Bookstore/Adult Entertainment Center" in

---

**5.** In determining that the guidelines are sufficiently narrow to prevent the board from having unbridled discretion, we need only facially examine the ordinance. We observe that had appellants applied for a permit the board would have been required to support its decision in light of the thirteen criteria specified in § 7A.

**6.** See n. 3, *supra*.

language that is equivalent to that held sufficiently precise in *Young v. American Mini Theatres, supra*; *Hart Book Store, Inc. v. Edmisten*, 612 F.2d 821 (4th Cir.1979), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124, (1980); and *15192 Thirteen Mile Rd. v. City of Warren, supra.*

It is, as Judge Harvey made clear in *15192 Thirteen Mile Rd. v. City of Warren*, 593 F.Supp. at 155, "logically possible" for an ordinance to be precise in its language yet still be overly broad in its span.

> "A challenge on the basis of overbreadth raises two questions: whether the language of the statute reaches too broadly and proscribes protected conduct, and whether too much discretion is vested in the officials who administer the statute. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)."

The trial judge in the matter *sub judice* ruled, and we agree, that Ordinance 84–1 "meets the criteria requiring ... narrowly drawn, objective, reasonable, and definite standard[s] ... [guiding] the administering officials." Those guidelines are sufficiently clear and precise to be considered definite standards to guide the zoning officials. We hold, therefore, that Perryville Ordinance 84–1 is not violative of the appellant's First Amendment freedoms.

Maryland case law provides further safeguards relative to conditional use provisions such as those in the Perryville ordinance. The Court of Appeals in *Shultz v. Pritts*, 291 Md. 1, 22–23, 432 A.2d 1319 (1981), said:

> "We now hold that the appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location ... would have any adverse effects above and beyond those inherently associated with ... a special exception use irrespective of its location within the zone."

To deny an applicant a special exception, the zoning authority must find that the location would suffer unique problems "above and beyond those" normally associated with the particular use irrespective of whether it is situated within the prescribed zone. *Id.*

### The Lingerie Store Occupancy Permit

■ Appellant argues that her permit for a "lingerie shop/retail sales" includes permission to sell adult books. The gist of her argument is that the permit does not distinguish between the sale of apparel and the sale of nonadult books. Each of those categories are permit sales in a C–2 area. Adult books, appellant avers, cannot be singled out and treated differently than other retail inventory. Patently, appellant's position is incorrect, else *Renton, Young, Hart,* and *15192 Thirteen Mile Road* would have been decided differently.

The Court in *Young v. American Mini Theatres, Inc., supra,* held that zoning regulations may identify certain types of establishments for special treatment or additional restrictions provided the regulations serve a legitimate governmental purpose. *See also Hart Bookstores, Inc., supra.* There is no merit in appellant's argument. A permit to sell one nonregulated commodity does not include the right to sell a validly regulated product.

### Obscenity

Few principles of law are more firmly established than that obscenity is not protected speech under the First Amendment. *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Monfred v. State,* 226 Md. 312, 173 A.2d 173 (1961), *cert. denied,* 368 U.S. 953, 82 S.Ct. 395, 7 L.Ed.2d 386 (1962).

Before printed materials may be judicially determined "obscene," the court must apply the test enunciated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). That test requires the following considerations:

"1. Whether the average person, applying contemporary community standards would find the work, taken as a whole, appeals to the prurient interest;

2. Whether the work depicts in a patently offensive way, sexual conduct as specifically defined by state law; and

3. Whether the work taken as a whole lacks serious literary, artistic, political or scientific value."

That the *Miller* test is binding on Maryland courts is beyond serious question. *B & A Co. v. State*, 24 Md.App. 367, 330 A.2d 701 (1975).

■ In deciding whether materials are obscene, a court must not rule based upon its personal view of the materials. Rather the materials must be viewed as objectively as possible. *Village of Books v. State's Attorney*, 263 Md. 76, 282 A.2d 126 (1971).

■ The "contemporary community standards" element of the Miller test simply means that a "community cannot, where liberty of speech or press are in issue, condemn that which it generally tolerates." *Sanza v. Maryland State Censors*, 245 Md. 319, 226 A.2d 317 (1967).

At the trial of the matter now before us, the appellant, 5297 Pulaski Highway, produced evidence that magazines of substantially the same type as those the court found "sleazy," "typically 'black market'" and "obscene" were sold in stores within the ordinance proscribed bounds.[7]

---

7. Penthouse, November 1985; Playboy, November 1985; Velvet, November 1985; High Society, November 1985; Swank, November 1985; Adam, Vol. 29, No. 10; Cheri, Vol. 10, No. 4; High Society, Collector No. 4; Group Love, Talks Special, No. 6; Velvet, No. 3; Hot Encounters; Pub, December 1985; Harvey, December 1985; Iron Hors, October 1985; Genesis, December 1985; Cinema, November 1985; Adult Erotica, No. 6, 1985; Playgirl, November 1985; In the Wind, No. 21; Playgirl Superstars, December 1985, Vol. 5, # 12; Hustler, December 1985; Gallery, November 1985; Talkies, November 1985; Tracy & Christy, 1986 Ed.; Club, 1985; Swank Letter, No. 7; Adults, No. 5; Boobs, November 1985; Hustler Calendar, 1986; Newlook, November 1985; Hooker, December 1985; Hustler Fantasies, December 1985;

Additionally, there was evidence that other stores within close proximity to Perryville were displaying and offering for sale similar type magazines.[8]

The trial court in the instant case declared that it was in effect applying a "shortcut" we mentioned in *Woodruff v. State*, 11 Md.App. 202, 273, A.2d 436 (1971).[9] The difficulty with that declaration is two-fold: first, it is not clear since *Miller* was decided by the Supreme Court whether the

---

True letters, December 1985; Vibrations #3; Vibrations, January; High Society Letters, December 1985; Family Letters, December 1985; Hot Dreams, Winter 1986; Family Affairs, December 1985; Couples Today, January 1986; Lusty Letters, Winter 1986; Intimate Acts, No. 8, 1985.

**8.** Playboy Collector's Edition; Big Breasts; High Society; Nuggets; Partners; Hustler; Penthouse; Gallery; Hustler Calendar; Easy Rider; Cheri; Books; Forum; X Letters; Adult Letters; Best of Vibrations; Oui; Swank; Stag; New Look; Genesis; Club; Chic; Penthouse Letters; Gent; Playboy Calendar; Club International; Forum; Penthouse Original Letters; Human Digest; Sensuous; Hot Talk; Vibrations; Velvet; Super Cycle; Turn Ons; Girls; Adam; Talks; Companion; Big Boobs; Nuggets; Video X; Hooker; Fling; Honcho; Adult Cinema; Easy Rider; Players; Harvey; Cavalier; Expose; Touch; Guy; Pillow Talk; Hot Dreams; Sensuous Letters; High Society Letters; Oliver; and Numbers.

**9.** In *Woodruff v. State, supra,* 11 Md.App. at 226, 273 A.2d 436, the Court said:

"[We have] . . . recognized that in some instances the more traditional methods of proof by expert testimony may be dispensed with, where the questioned material is such 'hard-core pornography' that it 'screams for all to hear' as to its pornographic content. *Levin v. State State,* . . . [1 Md.App. 139, 228 A.2d 487 (1967) ]; *Donnenberg v. State,* . . . [1 Md.App. 591, 232 A.2d 264 (1967) ]; *Lancaster v. State,* . . . [7 Md.App. 602, 256 A.2d 716 (1969) ]. This evidentiary shortcut has been permitted, however, only in dealing with the most flagrant pornography. Such material is typically of the 'black market' variety—that sold 'under the counter' in the 'sleazy bookstore.' This is the sort of material that we feel Justice Stewart had in mind when he indicated that although he had difficulty defining it, he 'knew it when he saw it.' Certainly to be found in this category would be the 'stag movie,' the deck of 'French playing cards,' the venerable 'two-by-four' of schoolboy memory. This is the sort of material which permits of no reasonable dispute."

"evidentiary shortcut" is still viable [10]; second, even if it is, the statement that the magazines and books in the instant case are "sleazy," "hard core pornography," and "under the counter" simply does not withstand scrutiny when considered in the light of what has been determined to be "sleazy" and "hard core." For example in *Levin v. State*, 1 Md.App. 139, 228 A.2d 487 (1967), there were photographs of erect penises but no text or captions relative to the photographs. *Donnenberg v. State*, 1 Md.App. 591, 232 A.2d 264 (1967), was concerned with "bondage." The publication depicted naked women who were gagged, bound, and placed in twisted and tortuous poses. *Lancaster v. State*, 7 Md.App. 602, 256 A.2d 716 (1969), evolved from a silent stag movie of a man and woman engaged in various acts of conventional and unconventional intercourse. All three of these cases, *Levin, Donnenberg* and *Lancaster*, were found by the court to "scream for all to hear that they were obscene." The books and magazines in the instant case, while unquestionably offensive to some, do not "scream for all to hear that they are obscene."

The *Woodruff* case presents a possible "evidentiary shortcut," but it does not sanction a finding of obscenity by the mere mouthing of magic words such as "sleazy," "hard core," "under the counter," "black market" and the like. Something more positive is required. We think that if trial judges use the "evidentiary shortcut" of *Woodruff*, they should state with some particularity the reasons why they have found the magazines or books to be obscene. That was not done in the matter *sub judice*.

■ This Court is constitutionally mandated to make an independent reflective judgment as to whether the trial

---

**10.** We need not in this case nor do we decide whether *Woodruff's* "evidentiary shortcut" is still permissible.

judge correctly decided the question of obscenity.[11] *Levin v. State, supra,* 1 Md.App. at 143–44, 228 A.2d 487.

 Having made that review, we hold that the magazines and books determined by the trial judge to be within the "sleazy, hard core, black market, under the counter type" do not fit that mold. Indeed, when we apply the *Miller* test with its community standards factor, we are led to the inescapable conclusion that when judged by community standards the printed matter offered for sale at 5297 Pulaski was not obscene, and the trial judge's holding to the contrary was error. Notwithstanding that error, we need not reverse the judgment of the trial court since that portion of the judge's finding is not embraced within the injunction. The order of the circuit court merely enjoined 5297 Pulaski Highway, Inc., from selling the adult magazines and books until "a conditional use permit [is] obtained from the Perryville zoning authority." Because we are of the view that the Perryville zoning ordinance is facially constitutional, we affirm the judgment of the circuit court.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

***

**11.** We observe that at the conclusion of the presentation of evidence the trial judge exclaimed: "I guarantee you I'm not going to read over all these books. But I will go ahead and peruse the evidence that you requested." What that apparently self-contradictory statement means eludes us. Did the judge read or not read the evidence before arriving at his conclusion that the materials taken from 5297 Pulaski Highway were obscene?