## 11126 BALTIMORE BOULEVARD, INC., etc.

v.

## PRINCE GEORGE'S COUNTY OF MARYLAND, et al.

### Civ. No. K–86–1411.

United States District Court, D. Maryland.

April 15, 1988.

Howard J. Schulman, Baltimore, Md., for plaintiff.

Larnzell Martin, Jr., Co. Atty., and Steven M. Gilbert, Associate Co. Atty., for

Prince George's County, Upper Marlboro, Md., for defendant Prince George's County of Maryland.

Monroe Jon Mizel, Kensington, Md. for defendants Gary Greene and Paul Malone t/a Deslico, a Joint Venture.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff, a Maryland corporation and the operator of an adult bookstore in a shopping mall in Prince George's County, Maryland ("County"), contends that the County's zoning provisions regulating the location and operation of adult bookstores violate the First and Fifth Amendments.[1] Plaintiff brings this action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief. After extensive briefing and two hearings, the parties have submitted the case to this Court to determine the facts without trial, on the basis of the record, and to apply the law to those findings of fact.[2]

### I. *The Zoning Legislation*

The Prince George's County Council[3] enacted zoning regulations governing adult bookstores in 1975, and modified those regulations in 1976 and 1980. The most recent changes became law in 1987, after this case was instituted by plaintiff.[4]

Council Bill 156–1975, enacted on November 18, 1975, set forth the purpose of the adult bookstore legislation and established the standards to which such stores were required to conform. The preamble to the 1975 bill stated, in part, that its purpose was to "limit[ ] the location of adult bookstores" existing in 1975 or thereafter to certain commercial zones, to require a special exception before a bookstore could locate in those commercial areas specifically zoned for adult bookstores, and to require "that [then] existing adult bookstores be modified in order to lessen their impact on the community."

The County's Zoning Ordinance generally provides that a special exception[5] (including an application for an adult bookstore) *may* be approved if:

(1) The proposed use and site plan are in harmony with the purpose of this Subtitle;

(2) The proposed use is in conformance with all the applicable requirements and regulations of this Subtitle;

---

1. Plaintiff also named its landlord, Deslico, A Joint Venture, and its principals, Gary Greene and Paul Malone, as defendants in this action. *See* Complaint ¶ 5. Deslico had instituted a state court proceeding to eject plaintiff from the premises because plaintiff's violation of the Zoning Ordinance allegedly constituted a breach of plaintiff's lease. However, plaintiff has sought no relief against these parties and has not pressed any claims against them in this case.

2. There are few, if any, factual disagreements between the parties. However, in certain instances, this Court has been asked to accept or reject certain factual conclusions asserted or denied by one or another party, which the undisputed underlying facts in the record permit to be inferred. To the extent this Court has considered it relevant and material to accept or reject any such proposed inference, such acceptance and/or rejection is identified in this opinion.

3. In the State of Maryland zoning power is usually exercised by each of the counties and the State of Maryland. However, most of Prince George's County is within the zoning jurisdiction of the District Council for the Maryland–Washington Regional District, which also includes the District of Columbia and Montgomery County, Maryland. In zoning matters affecting property located in Prince George's County within the Maryland–Washington Regional District, the Prince George's County Council sits as the District Council.

4. The Zoning Ordinance of Prince George's County is Subtitle 27 of the Prince George's County Code. The adult bookstore provisions at issue in this case were added to the ordinance by County Council Bills 156–1975, 10–1976, 104–1976, and 116–1980. References to the Prince George's County Code are to the most recent recodification of Subtitle 27, involving minor word changes in the language contained in the original bills. *See* note 6 below.

5. "A special exception is a use which has been legislatively predetermined to be conditionally compatible with the uses permitted as of right in a particular zone, the condition being that a zoning body must, in each case, decide under specified statutory standards whether the presumptive compatibility in fact exists." *Creswell v. Baltimore Aviation Service, Inc.,* 257 Md. 712, 719, 264 A.2d 838 (1970). The County's special exception provisions apply to all uses which are not in conformance with the permitted uses in a given zone.

(3) The proposed use will not substantially impair the integrity of any validly approved Master Plan or Functional Master Plan, or, in the absence of a Master Plan or Functional Master Plan, the General Plan;

(4) The proposed use will not adversely affect the health, safety, or welfare of residents or workers in the area; and

(5) The proposed use will not be detrimental to the use or development of adjacent properties or the general neighborhood.

Section 27–317.

Prince George's County Code § 27–314 provides that the District Council may approve special exceptions, subject to the delegation of this authority to a Zoning Hearing Examiner. County Code § 27–312 provides, among other things, that the Zoning Hearing Examiner "shall have all the authority, discretion, and power given the District Council" with respect to the granting of special exceptions to the extent that there is not a specific provision to the contrary.

An adult bookstore is defined in Section 1 of the 1975 bill as:

Any commercial establishment that has twenty-five percent (25%) or more of its stock in books, periodicals, photographs, drawings, sculpture, motion pictures, films or other visual representations which depict sadomasochistic abuse, sexual conduct or sexual excitement as defined by Article 27 Section 416A of the Annotated Code of Maryland and does not otherwise qualify as a theatre or nonprofit free lending library.

Section 7 of the bill also subjected adult bookstores to the following specific locational and operational conditions:

(a) the structure in which such use is proposed shall be at least 1,000 feet from the nearest property line of any public, private, or parochial school, library, park, or playground, and at least 500 feet from the nearest property line of any church, convent, monastery, synagogue or other place of worship;

(b) special conditions, such as, but not limited to, restrictions on advertisement, outdoor display, location of merchandise, and other reasonable requirements deemed necessary to safeguard the health, safety, morals, and general welfare of the community may be imposed by the District Council as requisite to the grant of a special exception;

(c) Such use will not impair or prove detrimental to neighboring properties, existing or potential land uses in the general area, or the development of same.

Further, the bill provided, at Section 6:

In order to prevent the impairment of, or detriment to, neighboring properties, including existing or potential land uses in the neighborhood and in order to protect children who may be attracted to such establishments, the continuation of a legal, non-conforming adult book store shall only be permitted if the following requirements are met:

(a) All windows, doors and other apertures shall be blackened or otherwise obstructed so as to prevent the viewing of the interior of the establishment from without.

(b) Outdoor displays or advertising shall be limited to one (1) business sign as provided for in Section 25.61.

(c) The proprietor, owner and/or personnel of such establishment shall prohibit access to the premises by any person who has not attained the age of eighteen (18) years.

The County Council, in Council Bill 10–1976, enacted on April 6, 1986, amended the locational restrictions as follows:

The structure in which such use is proposed shall be at least one thousand (1,000) feet from the nearest property line of any land in any residential zone, or any public, private, or parochial school, library, park, [or] playground, or other recreational facility, whether commercial or nonprofit, in any other zone, and at least [500] 1,000 feet from the nearest property line of any church, convent, monastery, synagogue or [other] similar place of worship. . . .

(Underscoring indicates added language; brackets indicate deletions.)

On November 16, 1976, the County Council enacted additional changes in Council Bill 104–1976, providing, *inter alia,* for the continuation of preexisting nonconforming uses, including adult bookstores predating November 18, 1975, as long as any such stores complied with the new locational and operational restrictions.

In 1980, changes were enacted by the District Council in Council Bill 116–1980, reducing to 5 percent from 25 percent the percentage of material depicting sadomasochistic abuse, sexual conduct or sexual excitement which a store could carry and still avoid classification as an adult bookstore. That 1980 change also added an amortization provision for nonconforming bookstores:

In order to provide for a reasonable standard of amortization, and to prevent an unreasonable loss, all nonconforming adult bookstores may continue in operation until July 1, 1985, in accordance with the provisions of Subsection (a) of this Section. On or after that date, an adult book store may only continue in operation pursuant to a special exception for an adult book store, approved in accordance with the provisions of Division 36 [provisions for granting of exceptions] of this Subtitle.

The zoning requirements were again altered in 1987 to require adult bookstores to prohibit access to minors. Section 27–331(a)(3).[6]

6. Since the enactment of Council Bill 116–1980, the Zoning Ordinance was repealed and reenacted in recodified form. The present version of the adult bookstore provisions reads as follows:

SECTION 27–107.1(a)(6)

Adult Book Store: Any commercial establishment, which does not otherwise qualify as a theater or nonprofit free-lending library, that either:

(A) Has five percent (5%) or more of its stock on the premises, or has five percent (5%) or more of its stock on display, in books, periodicals, photographs, drawings, sculpture, motion pictures, films, or other visual representations which depict sadomasochistic abuse, sexual conduct, or sexual excitement, as defined by Article 27, Section 416A of the Annotated Code of Maryland; or

(B) Has on the premises one (1) or more mechanical devices for viewing such materials.

SECTION 27–248

(a) In order for a certified nonconforming adult book store to continue, the requirements of this Section shall be met (in addition to any other applicable requirements of this Division).

(b) The purposes of this Section are:

(1) To protect children, who may be attracted to these establishments; and

(2) To prevent or control detrimental effects upon neighboring properties, and existing and proposed land uses in the general area.

(c) All certified nonconforming adult book stores shall meet the following requirements:

(1) All windows, doors, and other apertures shall be blackened or obstructed so as to prevent anyone outside the establishment from viewing its interior;

(2) Advertising shall be limited to one (1) business sign, as provided for in Section 27–615;

(3) The proprietor, owner, or personnel of the establishment shall prohibit access to the premises by any person who is under eighteen (18) years old.

(d) In order to provide for a reasonable standard of amortization and to prevent an unreasonable loss, all certified nonconforming adult book stores may continue in operation until July 1, 1985, in accordance with the provisions of this Subtitle. On or after that date, an adult book store may only continue in operation if a Special Exception for an adult book store is approved in accordance with Part 4 of this Subtitle.

SECTION 27–317

(a) A Special Exception may be approved if:

(1) The proposed use and site plan are in harmony with the purpose of this Subtitle [27];

(2) The proposed use is in conformance with all the applicable requirements and regulations of this Subtitle [27];

(3) The proposed use will not substantially impair the integrity of any validly approved Master Plan or Functional Master Plan, or, in the absence of a Master Plan or Functional Master Plan, the General Plan;

(4) The proposed use will not adversely affect the health, safety, or welfare of residents or workers in the area; and

(5) The proposed use will not be detrimental to the use or development of adjacent properties or the general neighborhood.

SECTION 27–331

(a) An adult book store may be permitted [by special exception in certain zones], subject to the following:

(1) The subject structure shall be located at least one thousand (1,000) feet from any Residential Zone, land proposed to be used for

## II. *Background*

Plaintiff's bookstore, located at 11126 Baltimore Boulevard in Prince George's County, began operations in June, 1975, pursuant to a County use and occupancy permit. After the effective date of the County's first adult bookstore zoning regulations, enacted on November 18, 1975 as Council Bill 156–1975, the County requested plaintiff to apply for certification as a nonconforming use or to reduce stock in adult material to less than twenty-five percent. Plaintiff chose the latter alternative. After the 1980 amendments (Council Bill 116–1980), the County asked plaintiff to reduce its adult stock to less than five percent or to obtain a special exception. However, plaintiff did not do so. On July 2, 1985, a zoning inspector examined plaintiff's store, concluded that all of the stock on display depicted sadomasochistic abuse, sexual conduct or sexual excitement as defined by Article 27 § 416A of the Annotated Code of Maryland, noted that plaintiff did not have a special exception, and caused plaintiff to be cited for violating the Zoning Ordinance. On September 18, 1985, the County Board of Zoning Appeals, in an Opinion and Order, ruled that plaintiff was operating in violation of the Zoning Ordinance and required plaintiff to cease all operations by September 30, 1985. Plaintiff has not obeyed that order.

On February 7, 1986, Deslico, plaintiff's landlord, filed a suit in state court, *Deslico Joint Venture v. Emmette Demmernetti, T/A 11126 Baltimore Boulevard, Inc.*, No. CAL86–02239 (Circuit Court for Prince George's County), seeking to eject plaintiff because the landlord had been notified by the County that plaintiff was in violation of the Zoning Ordinance. Plaintiff then filed this action on May 5, 1986. Thereafter, on May 22, 1986, the County filed suit in state court, *Prince George's County of Maryland v. Greene*, No. HHF53–2667–86 (District Court for Prince George's County), seeking to enforce the September 18, 1985 Order of its Board of Zoning Appeals. The two state court actions have been stayed by the respective state courts pending the outcome of this federal case.

Plaintiff's First Amendment challenge has two prongs. First, plaintiff argues that the adult bookstore regulations were adopted without a showing that the restrictions placed on adult bookstores serve a significant state interest. Second, plaintiff asserts that the Zoning Ordinance grants too much discretion to zoning officials charged with enforcing the adult bookstore provisions. With regard to the Fifth Amendment, plaintiff asserts that the Ordinance's definition of adult bookstore requires applicants for a special exception to admit to the possession of criminally obscene materials, in contravention of that amendment's proscription of compelled self-incrimination.

All of the predicates for a § 1983 action are present. The County is a political subdivision of the State of Maryland and, in enacting the zoning provisions challenged by plaintiff, acted as a person under color of state law. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 669, 98 S.Ct. 2018, 2025, 56 L.Ed.2d 611 (1978).

## III. *Standing*

■ The County contends that plaintiff lacks standing to bring this action under either the First or the Fifth Amendment. Plaintiff is a corporation and corporations have "no constitutional privilege against compulsory self-incrimination by virtue of the Fifth Amendment." *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 71, 94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974).

residential purposes on an approved Basic Plan for a Comprehensive Design Zone, approved Official Plan for an R–P–C Zone, or any approved Conceptual or Detailed Site Plan, or property associated with any of the following: school, library, park, playground, recreational facility, church, convent, or monastery.

(2) As a part of the Special Exception approval, the Council may restrict advertisement, outdoor display, and the location of merchandise, and may impose other reasonable requirements deemed necessary to safeguard the health, safety, morals, and general welfare of the community.

(3) The proprietor, owner, or personnel of the establishment shall prohibit access to the premises by any person who is under eighteen (18) years old.

See also *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) ("[s]ince the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation"). Under the circumstances of this case, therefore, plaintiff cannot assert a Fifth Amendment claim, and the question of whether a person may incriminate himself by seeking a special exception for a bookstore as it is defined in section 27–107–1(a)(6)(A) is not reached in this opinion.[7]

▮ The County argues that plaintiff lacks standing with respect to its First Amendment claim because the threat of prosecution alleged by plaintiff is merely "conjectural," not "real and immediate." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citing to and quoting from earlier Supreme Court cases). The fact that plaintiff is a corporation does not affect its standing to challenge on First Amendment grounds state action which, if enforced, will have a detrimental economic impact. *See Pierce v. Society of Sisters*, 268 U.S. 510, 535, 536, 45 S.Ct. 571, 374, 69 L.Ed. 1070 (1925); *Virginia v. American Booksellers Ass'n, Inc.*, —— U.S. ——, ——, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988); *Black Jack Distributors, Inc. v. Beame*, 433 F.Supp. 1297, 1302–03 (S.D.N.Y.1973). In any event, when First Amendment rights of freedom of expression are involved, standing requirements are usually relaxed. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *Secretary of State of Maryland v. J.H. Munson, Co.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1983).

In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), Justice Rehnquist outlined three minimum requirements which must be met in order for a plaintiff to satisfy the standing requirement pursuant to Article III of the Constitution. First, the plaintiff must "'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Id.* at 472, 102 S.Ct. at 758 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–1608, 60 L.Ed.2d 66 (1979)). Second, the plaintiff must demonstrate that the injury "'fairly can be traced to the challenged action.'" *Id.* (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). Finally, the plaintiff must show that his grievance "'is likely to be redressed by a favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 41, 96 S.Ct. at 1926). The County's Board of Zoning Appeals has ordered plaintiff to cease operating as an adult bookstore as of September 30, 1985 because plaintiff failed to comply with the challenged zoning provisions. Plaintiff is a defendant in a case brought by the County to enforce that order and is also a defendant in an eviction proceeding brought by plaintiff's landlord as a result of the zoning violation. Plaintiff therefore faces a threat to its business survival—an immediate threat from which it can obtain redress if successful in this case. Accordingly, plaintiff has standing to press its First Amendment claims.

IV. *Content–Based or Content–Neutral*

▮ The threshold inquiry in a First Amendment case involving a zoning ordinance is whether the legislation at issue is a content-based restriction, or a content-neutral time, place and manner restriction. The difference may well be outcome-determinative since the standard of review for time, place and manner restrictions is less stringent than that for content-related restrictions. "[R]egulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment," while "so-called 'content-neutral' time, place and manner regulations are acceptable so long as they are

---

7. Whether plaintiff can vicariously assert a Fifth Amendment privilege against self-incrimination on behalf of others is a question which need not be reached since plaintiff has not requested relief on behalf of anyone other than itself.

designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed. 2d 29 (1986).

*Renton* involved a challenge to the constitutionality of a zoning ordinance prohibiting adult motion picture theaters from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. Justice Rehnquist wrote for the majority that " 'content-neutral' speech regulations ... 'are [those which can be] *justified* without reference to the content of the regulated speech.' " *Id.* at 48, 106 S.Ct. at 929 (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976)) (emphasis supplied in *Renton* by Justice Rehnquist). The district court in *Renton* had concluded that the Renton ordinance was "aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theaters on the surrounding community." *Id.* 475 U.S. at 47, 106 S.Ct. at 929 (emphasis supplied in *Renton* by Justice Rehnquist). Since "[t]he ordinance by its terms [was] designed to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views," the ordinance in *Renton* was held by the

Supreme Court to be a valid "content-neutral" regulation. *Id.* at 48, 106 S.Ct. at 929.[8]

Under the standards enunciated in *Renton*, the ordinance in this case is a content-neutral time, place and manner regulation. As the legislation's preamble and various sections state, it is aimed at the adverse impact of adult bookstores upon the surrounding neighborhoods and upon children.[9] While the legislative history in the record is sparse, the little evidence which does exist does not contradict that view. The Administrative Bill Files of the 1975 ordinance and its 1980 amendments indicate that the Council had received letters from concerned citizens and organizations arguing that adult bookstores had or would have a negative impact upon young children and upon neighborhoods. A staff person who was involved in drafting the legislation states that the concern of the Council was with the effects of the bookstores with regard to neighborhoods.[10] The record does not suggest any intent by members of the Council or others to do more than restrict the areas in the County in which adult bookstores could locate.

The language of the ordinance itself—although not entirely clear in some important respects—also does not indicate that the Council's intent was to ban adult bookstores entirely. Section 27–248(d) of the Zoning Ordinance provided for a five-year "amortization" period for nonconforming adult bookstores to conform to the new regulations.[11] That language creates some

---

**8.** In *Renton*, Justice Rehnquist rejected the Ninth Circuit's examination of whether a motivating factor in enacting the ordinance was the restriction of the exercise of First Amendment rights since "an alleged illicit legislative motive" will not render unconstitutional "an otherwise constitutional statute." 475 U.S. at 48, 106 S.Ct. at 929 (quoting *United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968)). In the case at bar plaintiff does not appear to challenge the motives of the County Council in enacting the adult bookstore provisions.

**9.** The Preamble to the original adult bookstore zoning bill (CB–156–1975) notes that the new sections it adds to the Zoning Ordinance are "for the purpose of limiting the location of adult

book stores ... in order to lessen their impact on the community."

Council Bill 116–1980, Section 1, added the following language to then-Section 27–482.1 of the Zoning Ordinance:

(a) In order to prevent the impairment of, or detriment to, neighboring properties, including existing or potential land uses in the neighborhood, and in order to protect children who may be attracted to such establishments, the continuation of a legal, nonconforming adult book store shall only be permitted if the following requirements are met: ...

**10.** Affidavit of Ruth Senes ¶¶ 5–6.

**11.** *See* Section 27–248(d), quoted *supra* at note 6.

doubt as to whether an adult bookstore could obtain a special exception after the expiration of the five-year period (July 1, 1985) or whether only those bookstores which would be able to obtain a special exception prior to July 1, 1985 could continue to operate. This section prohibiting the opening of new adult bookstores without a special exception does perhaps indicate that the County was "concerned with restricting the message purveyed by adult[-oriented]" establishments. *Young v. American Mini–Theatres, Inc.*, 427 U.S. 50, 82 n. 4, 96 S.Ct. 2440, 2458, n. 4, 49 L.Ed.2d 310 (1976) (Powell, J., concurring). In that regard, however, the County asserts that the amortization language does not ban adult bookstores from opening after July 1, 1985, but rather required all then-existing bookstores to obtain a special permit before that date.[12] The language of the ordinance is restrictive but not entirely prohibitory and permits any store with 5 percent or more of its stock in "adult" materials to continue to operate if it obtains a special exception. It also allows a bookstore whose stock has less than 5 percent of "adult" materials to operate without obtaining a special exception and irrespective of location restrictions. In sum, First Amendment expression is not *completely* limited by the legislation regardless of whether the store is in the 5–25 percent, or the-less-than 5 percent, category.

Even if the ordinance does not absolutely prohibit adult bookstores from operating, it might be deemed overly restrictive and violative of the First Amendment if the spatial restrictions unduly limit the areas in which adult bookstores may operate. In *American Mini–Theatres*, Justice Stevens, writing for a plurality, suggested that if a zoning ordinance has the "effect of suppressing, or greatly restricting access to,

lawful speech," then it may not pass muster as a valid time, place, and manner restriction. 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35. In *Renton*, Justice Rehnquist noted that approximately five percent of the entire land area of the city would be open to use by adult theaters, providing enough potential access to survive constitutional challenge. *Renton*, 475 U.S. at 53, 106 S.Ct. at 932. In *15192 Thirteen Mile Road*, 593 F.Supp. 147, 156 (E.D.Mich. 1984), the court held that the availability of 85 sites on which adult bookstores could locate was not unconstitutionally restrictive. And in *S & G News, Inc. v. City of Southgate*, 638 F.Supp. 1060, 1066 (E.D. Mich.1986), *aff'd*, 819 F.2d 1142 (6th Cir. 1987), the court concluded that permitting adult enterprises in C–3 zones which comprise 2.3 percent of the land area in the city provided sufficient alternative means of expression. In his affidavit Mr. Hutchinson indicates that adult bookstores—along with most commercial and industrial uses—are prohibited in all residential areas, which comprise ninety percent of the land area in the County.[13] Of the 22,500 acres of land available for commercial and industrial development, 1,400 acres, or six percent, can be used for adult bookstores. Mr. Hutchison further states that, taking into consideration the spatial restrictions placed upon adult bookstores, and measuring such distances in a straight line, there are twenty locations in which adult bookstores could operate.[14] Since there are only approximately seven adult bookstores currently operating in the County,[15] at least thirteen additional spots apparently exist at which adult bookstores may locate. Based upon those submissions, sufficient alternative avenues of communication are available. Since plaintiff has not submitted any evi-

---

12. Affidavit of Barry S. Cramp ¶ 7(d). Dale C. Hutchison, chief of the zoning division of the Maryland–National Capital Park and Planning Commission, stated in his affidavit that "[t]o date, [March 26, 1987] each of the three special exception applications filed for adult book stores has been denied solely because it did not meet the 1,000 foot restriction." Affidavit of Hutchison ¶ 8. Plaintiff has not contested that assertion.

13. Hutchison Aff. ¶ 6(b).

14. Hutchison Aff. ¶¶ 6(c) and 7. Mr. Hutchison notes that if the 1000–foot restriction is measured along public rights-of-way, the number of areas available for use by adult bookstores would be greater than twenty. Hutchison Aff. ¶ 7.

15. Hutchison Aff. ¶ 6(a).

dence to contradict the accuracy and trustworthiness of the assertions in the affidavits and other appropriate Fed.R.Civ.P. 56 materials presented by the County, this Court concludes that the County's aim in enacting the legislation of which plaintiff complains was not to eliminate adult bookstores from operating in the County, or to regulate the content of the materials sold at adult bookstores, but rather to restrict the time, place and manner in which such stores may operate.

## V. *Time, Place and Manner*

In *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), Chief Justice Warren wrote that "a government regulation [of expression] is sufficiently justified if it is [1] within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377, 88 S.Ct. at 1679. And in *Renton,* the Court concluded that the "appropriate inquiry" in time, place and manner cases is "whether the ... ordinance is designed to serve a substantial government interest and allows for reasonable alternative avenues of communication." *Renton,* 475 U.S. at 50, 106 S.Ct. at 930.

■ Zoning regulations, as such, are not unconstitutionally invalid. *See Village of Euclid v. Amber Realty Co.,* 272 U.S. 365, 396–97, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *see also Agins v. City of Tiburon,* 447 U.S. 255, 261–62, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980). Ordinances aimed at preserving the quality of urban life reflect a sufficiently substantial governmental interest to support regulation of adult theaters where no other constitutional infirmities are present. *See Renton,* 475 U.S. at 54, 106 S.Ct. at 932; *American Mini–Theatres,* 427 U.S. at 71, 96 S.Ct. at 2452–53. Thus, the County clearly had the power to enact the zoning provisions at issue in this litigation.

■ However, the "governmental interest" test of *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679, and *Renton,* 475 U.S. at 50, 106 S.Ct. at 930, requires that when a legislative body decides to regulate business in the adult entertainment field, "there must be some evidence in the record to substantiate a finding that the regulated speech produces negative secondary effects." *American Booksellers Ass'n, Inc. v. Webb,* 643 F.Supp. 1546, 1555 (N.D.Ga.1986). The County contends that a standard of minimum scrutiny is applicable and that the challenged legislation is valid if a rational basis exists for its enactment. Plaintiff, on the other hand, asserts that *American Mini–Theatres* and *Renton* require strict scrutiny—a careful review of the sufficiency of the factual record before the legislative body at the time the ordinance was enacted.

In *American Mini–Theatres,* Justice Stevens wrote: "[T]he record disclose[d] a factual basis for the Common Council's conclusion that [the adult theater] restriction will have the desired effect." 427 U.S. at 71, 96 S.Ct. at 2452–53 (footnote omitted). The record in *American Mini–Theatres* included "reports and affidavits from sociologists and urban planning experts, as well as some laymen, on the cycle of decay that had been started in areas of other cities, and that could be expected in Detroit, from the influx and concentration of such establishments." *Id.* at 81 n. 4, 96 S.Ct. at 2457 n. 4 (Powell, J., concurring). In striking down an ordinance banning live entertainment in *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), Justice White concluded that Mount Ephriam "has not adequately justified its substantial restriction of protected activity", *id.* at 72, 101 S.Ct. at 2184 (footnote omitted), noting that "no evidence has been presented to establish that live entertainment is incompatible with the uses presently permitted by the Borough." *Id.* at 75, 101 S.Ct. at 2186. In *Schad,* Justice White pointed to the evidence which had been before the Detroit Council in *American Mini–Theatres* as sufficient to meet the First Amendment burden placed on the Council with regard to regulations affect-

ing adult movie theaters. *Id.* at 71–72, 101 S.Ct. at 2184. Further, Justice White specifically called attention to the Court's "obligation to assess the substantiality of the justification offered for a regulation which significantly impinged on freedom of speech":

> "Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of [First Amendment] rights."

*Id.* at 69–70, 101 S.Ct. at 2183 (quoting *Schneider v. State,* 308 U.S. 147, 161, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939)) (footnote omitted).

In *Renton,* the city of Renton, Washington, situated approximately five miles outside of Seattle and part of the Seattle metropolitan area, relied upon an extensive Seattle report when it adopted an ordinance regulating adult book stores:

> The Court of Appeals ruled, however, that because the Renton ordinance was enacted without the benefit of studies specifically relating to "the particular problems or needs of Renton," the city's justifications for the ordinance were "conclusory and speculative." 748 F.2d, at 537. We think the Court of Appeals imposed on the city an unnecessarily rigid burden of proof. The record in this case reveals that Renton relied heavily on the experience of, and studies produced by, the city of Seattle. In Seattle, as in Renton, the adult theater zoning ordinance was aimed at preventing the secondary effects caused by the presence of even one such theater in a given neighborhood.
>
> ....
>
> We hold that Renton was entitled to rely on the experiences of Seattle and other cities ... in enacting its adult theater zoning ordinance. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. That was the case here.

*Renton,* 475 U.S. at 50–52, 106 S.Ct. at 930–31.[16]

In *Wall Distributors, Inc. v. City of Newport News, Virginia,* 782 F.2d 1165 (4th Cir.1986), Judge Phillips held that a criminal statute which made it an offense to exhibit movies in enclosed booths was a content-neutral time, place, and manner regulation. *Id.* at 1168. Accordingly, Judge Phillips applied the *O'Brien* test to the statute, and rejected the assertion of Wall Distributors that the city did not have sufficient concrete evidence of the activities and health conditions in such booths to provide an adequate basis to support the need for such legislation. In so doing, Judge Phillips wrote:

> The decision to enact such a regulation constitutes a legislative determination that closed booth showings produce side effects that are destructive of public health, decency and order. To have this determination sustained against constitutional attack, a legislature is not bound to create an evidentiary record that would pass muster on plenary judicial review of [the] legislation's necessity and fitness to achieve desired results. Judicial review goes only to whether the legislative determination of justification and fitness is not facially without factual

---

**16.** For lower court cases with regard to legislative reliance on experience in other areas, *see International Food & Beverage Systems v. City of Fort Lauderdale,* 794 F.2d 1520, 1527 (11th Cir. 1986); *Genusa v. City of Peoria,* 619 F.2d 1203, 1211 (7th Cir.1980); *S & G. News, Inc. v. City of Southgate,* 638 F.Supp. 1060, 1066 (E.D.Mich. 1986), *aff'd,* 819 F.2d 1142 (6th Cir.1987); *SDJ, Inc. v. City of Houston,* 636 F.Supp. 1359, 1367 (S.D.Tex.1986), *aff'd,* 837 F.2d 1268 (5th Cir. 1988); *15192 Thirteen Mile Rd., Inc. v. City of Warren,* 593 F.Supp. 147, 155 (E.D.Mich.1984).

support, hence not arbitrary and capricious.

*Id.* at 1169.[17]  Additionally, Judge Phillips noted:

> In assessing the reasonableness of local legislative determinations of ends and means under this quite deferential standard of constitutional review, we may not confine the local legislature to only what it knows and can foresee from purely local conditions already experienced.  Legislatures can no more be held bound not to know what the whole world knows than can courts; legislative notice of facts must be deemed to run at least as wide as does judicial notice.

*Id.* at 1169 n. 7.[18]

In *Hart Book Stores, Inc. v. Edmisten,* 612 F.2d 821 (4th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980), Judge Phillips upheld a statute which required that a single building could contain no more than one adult establishment, writing that the statute furthered a substantial legislative interest:

> The legislature could reasonably have determined that the development of the "total, under one roof" approach to the marketing of sexually explicit materials and devices tended to produce secondary effects destructive of the quality of life in the neighborhood.  While there is no formal legislative history of the law, the record does show that the sponsor of the legislation was concerned to bring these secondary effects to the legislature's attention.

---

17.  Judge Phillips noted the affidavit of a public official concerning the discovery of a semen-like substance in arcade booths and an arrest at an arcade.  That evidence seemingly was available to the legislative body at the time it adopted the ordinance at issue.  *See id.* at 1169 n. 6.

18.  Although this statement of Judge Phillips might be interpreted to suggest that a legislature could simply "take notice" of the fact that adult bookstores are "known" to create adverse secondary effects, the holding in *Renton*—which was decided after *Wall Distributors*—that a legislature must rely on some evidence shown to be relevant to local conditions, suggests otherwise.  *See Renton,* 475 U.S. at 50–52, 106 S.Ct. at 930–31.

*Id.* at 828 (footnote omitted).  In *Hart,* the legislative committee considering the bill did have before it a report on the results of an inspection of several adult entertainment-oriented businesses in one county of the state.  *Id.* at 828–29 n. 9.  In the view of this Court, while the record before a legislature considering the regulation of adult book stores need not be extensive, *some* substantive evidence of secondary effects is necessary.[19]

▮ A review of the record indicates that very little, if any, evidence of the secondary effects of adult bookstores was before the County Council at the time it first acted in 1975, or when it enacted amendments in 1976 and 1980.  The legislative file does show that the State's Attorney recommended enactment of zoning legislation, and that protection of neighborhoods and their residential character, and of children was a primary concern.[20]  The record does not indicate that the council or its staff was concerned with limiting or suppressing the distribution of adult materials with regard to the 1980 changes.  The legislative file indicates that the Mayor of Mount Rainier, Prince George's County, was concerned about revitalizing older neighborhoods; that Council members had received citizens' complaints about adult bookstores; and that the tighter 1980 requirements, including the amortization provisions, were intended to force all existing and proposed adult bookstores to comply with the special exception requirements first imposed in 1975.[21]

The affidavit of Ruth Senes, a Planning Commission employee who helped draft the

---

19.  *See Basiardanes v. City of Galveston,* 682 F.2d 1203, 1215 (5th Cir.1982); *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 661–62 (8th Cir. 1981); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir.1981); *Christy v. City of Ann Arbor,* 824 F.2d 489, 493 (6th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *CLR Corp. v. Henline,* 520 F.Supp. 760, 768 (W.D.Mich.1981), *aff'd,* 702 F.2d 367 (6th Cir.1983).

20.  *See* Administrative Bill File for CB–156–1975.

21.  *See* Administrative Bill File for CB–116–1980.

1975, 1976, and 1980 enactments, suggests that the County Council was concerned about "the adverse effects of adult bookstores on adjacent properties and surrounding neighborhoods," not with suppression of speech or the ideas in adult materials.[22] Senes has also stated that Council members were concerned "that adult bookstores not be located near areas where children (under age 18) would travel or congregate."[23]

But the record contains no reference to any study conducted by or for the County with regard to the adult bookstore issue. Nor is there any reference in the record to any studies conducted by other jurisdictions which had faced similar problems. A number of citizens of the County submitted letters expressing general concerns, but there is no indication in the record that any County official investigated any of the concerns cited in the letters, or that any official briefed the Council concerning the real or probable problems generated by existing adult bookstores. Nor does the record suggest that the members of the Council relied upon any written information supplied to them or that they discussed the effect of similar efforts to regulate adult bookstores elsewhere. Public hearings and committee meetings were held.[24] But the most substantial evidence in the record from these meetings is a "Speaker's List" for what appears to be a Council hearing on April 6, 1976 regarding Council Bill 10–1976, containing eleven names.[25]

The County has submitted to this Court a stack of reports and studies regarding adult bookstore zoning regulations and an affidavit from a professional land-use planner supporting the rationality of the Council's enactment of its adult bookstore ordinances. Had the Council received those materials prior to its vote on the ordinances, its actions would appear to fall within the standards of O'Brien and Renton. But post-hoc rationalizations—materials apparently collected for use in this case and not presented to the Council before it enacted the challenged legislation—are something quite different. See Keego Harbor Co. v. City of Keego Harbor, 657 F.2d 94, 98 (6th Cir.1981); Basiardanes v. City of Galveston, 682 F.2d 1203, 1215 (5th Cir. 1982). Neither the Supreme Court, nor the Fourth Circuit in Wall Distributors, has suggested that a legislature can enact adult bookstore ordinances without some specific evidence of secondary effects before it. While "[j]udicial review goes only to whether the legislative determination of justification and fitness is not facially without factual support," Wall Distributors, 782 F.2d at 1169, and legislators can be assumed to have knowledge of the experiences of other areas, Wall Distributors does not support the view that a record whose most concrete facts consist of general letters from citizens is sufficient to demonstrate a substantial governmental interest in a context in which First Amendment rights are at stake.

The third prong of the O'Brien standards, namely, whether the ordinance is aimed at the suppression of free expression, has been addressed supra. Plaintiff has not rebutted the County's position that adult bookstores can open in the County after July 1, 1985 if they first obtain a special exception. Nor has plaintiff effectively attacked the County's estimates concerning the availability of sites for adult bookstores. Accordingly, it would appear that the challenged zoning ordinance was not aimed at suppressing free expression.

The final prong of O'Brien requires that legislation affecting free expression be narrowly tailored to minimize any incidental restrictions upon First Amendment freedoms. O'Brien, 391 U.S. at 377, 96 S.Ct. at 1679. The County's locational zoning regulations are not significantly different from those in Renton and American Mini–Theatres. Confining adult bookstores to certain specific commercial and industrial zones may well promote the protection of residential areas and children, as may the

---

22. Senes Affidavit ¶ 5.

23. *Id.*

24. Senes Affidavit ¶ 5.

25. *See* Administrative Bill File CB–1C–1976.

1000–foot restriction and the sign and window-blackening requirements. The County's regulations do not suffer from the defects of the ordinance in *Schad,* which banned live entertainment, sexually explicit or otherwise, or the ordinance in *Keego Harbor,* which banned adult movie theaters. Some thirteen sites remain in the County upon which new adult bookstores apparently can open. Plaintiff has not challenged the suitability of those sites for development. *See Renton,* 475 U.S. at 53–54, 106 S.Ct. at 932.

▇ The County's ordinance does, however, grant wide discretion to the zoning officials who must approve an adult bookstore's application for the special exception.[26] Plaintiff challenges such broad discretion as constituting an unreviewable prior restraint.[27]

In *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), the Supreme Court discussed the permissible scope of a public official's discretion in the First Amendment context. In that case, Justice Stewart wrote that an ordinance requiring a permit for a parade or procession which could be denied if the City Commission deemed a particular parade to be detrimental to the welfare, decency, or morals of the community, was unconstitutional since it gave licensing officials "extensive authority to issue or refuse to issue parade permits on the basis of broad criteria entirely unrelated to legitimate municipal regulation of the public streets and sidewalks." *Id.* at 153. On the other hand, in *Heffron v. International Society for Krishna Consciousness, Inc.,*

452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), Justice White noted that a "first-come, first-served system" of awarding locations for soliciting at a state fair is "not open to the kind of arbitrary application that this Court has condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Id.* at 649, 101 S.Ct. at 2565.

Several lower federal courts have carefully scrutinized special permit procedures in a zoning context and have discussed specific criteria designed to control the discretion of zoning officials. For example, in *Amico v. New Castle County,* 571 F.Supp. 160 (D.Del.1983), *aff'd,* 770 F.2d 1066 (3rd Cir.1985), Judge Wright reviewed a zoning ordinance which required adult businesses to obtain a special permit (in addition to meeting certain lineal-spatial requirements) by demonstrating that the neighborhood would not be detrimentally affected by the issuance of the permit. Judge Wright held that the ordinance was "unconstitutional because it grants the licensing authority overly broad discretion to grant or deny the license." *Id.* at 173. Judge Wright stressed that "[t]he County Council is left to decide, without any guidance, what will detrimentally affect the neighborhood. Such discretion in the first amendment area is clearly not permissible." *Id.*

In *15192 Thirteen Mile Rd., Inc. v. City of Warren,* 593 F.Supp. 147 (E.D.Mich. 1984), an ordinance permitted an adult bookstore to locate in one of four zones

---

**26.** Plaintiff also asserts that the Council's delegation of authority to the Zoning Hearing Examiner is itself unconstitutional. That delegation, however, does not appear improper since the statute provides for review of the Hearing Examiner's decisions by the Council, Prince George's County Code § 27–312, and since, further, any such decisions can be overturned by a state court if found to be arbitrary, capricious, or contrary to law. *Schultz v. Pritts,* 291 Md. 1, 11, 432 A.2d 1319 (1981).

**27.** The Board of Zoning Appeals denied plaintiff's request for an extension of the period in which plaintiff could file for a special exception. *See* Attachment, Plaintiff's Response to Prince George's County's Motion for Summary Judg-

ment. Plaintiff thereafter apparently did not apply for a special exception. Prince George's County contends that since plaintiff failed to apply it cannot now challenge the standards used to evaluate applications for such exceptions. However, "[c]ourts hearing challenges to statutes giving standardless discretion to administrative agencies when they issue licenses have not required that the plaintiff actually apply to that agency and that the agency turn down the plaintiff's application." *Amico v. New Castle County,* 571 F.Supp. 160, 172 (D.Del.1983), *aff'd,* 770 F.2d 1066 (3rd Cir.1985). *See also Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969).

only if it obtained the special use approval of the City Planning Commission and the Board of Zoning Appeals. Such approval could only be granted if the adult bookstore "is not injurious to the zoning district and surrounding areas and is not contrary to the 'spirit and purpose of the ordinances.'" *Id.* at 150. The court held that the "indefinite general standards ... raise the possibility that local officials could effectively prohibit any adult entertainment facility. For there to be an effective permit requirement, a municipality must provide narrowly drawn, objective, reasonable, and definite standards to guide the administering officials." *Id.* at 156.[28]

The Court of Special Appeals of Maryland has recently examined certain special exception provisions in relation to adult enterprises. In that case, *5297 Pulaski Highway, Inc. v. Town of Perryville*, 69 Md.App. 590, 519 A.2d 206 (1987), *cert. denied*, 309 Md. 521, 525 A.2d 636 (1987), Chief Judge Gilbert rejected a First Amendment challenge to a zoning ordinance. In *Perryville* the zoning ordinance permitted the zoning board to authorize a "conditional use" and enumerated thirteen rather specific guidelines which the board was required to follow in determining whether to authorize a particular conditional use. 69 Md.App. at 597–98, 519 A.2d at

210–211.[29] Judge Gilbert reasoned that the guidelines were "sufficient in number and definitiveness" to overcome concern about undue discretion, particularly since any decision had to be made within a particular period of time. 69 Md.App. at 599–600, 519 A.2d at 211. Further, he noted that the Court of Appeals of Maryland in *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981), had limited the discretion of zoning officials by requiring "the zoning authority [to] find that the location would suffer unique problems 'above and beyond those' normally associated with the particular use irrespective of whether it is situated in the prescribed zone" before a requested special exception could be denied. 69 Md.App. at 602, 519 A.2d at 212 (quoting *Schultz v. Pritts*, 291 Md. 1, 22–23, 432 A.2d 1319 (1981)).

Prince George's County contends that its zoning officials have no discretion to deny a special exception if an applicant satisfies each zoning requirement by substantial evidence and if there is no substantial evidence to the contrary.[30] But that argument ignores the fact that the Zoning Ordinance's special exception criteria are quite vague, namely, whether a proposed use will be "in harmony" with the zoning plan (§ 27–317(a)(1); "substantially impair" the

**28.** The Court in *15192 Thirteen Mile Rd.* noted that the ordinance approved by the Supreme Court in *American Mini–Theatres* did not contain a special permit procedure. *Id.* at 156. Nor does the opinion in *Renton* indicate that the ordinance therein approved contained such a procedure.

**29.** The thirteen Perryville criteria are:
1. The nature of the proposed site, including its size and shape and the proposed size, shape, and arrangement of structures.
2. Traffic conditions including the resulting traffic patterns.
3. The nature of the surrounding area and the extent to which the proposed use might impair its present and future development.
4. The proximity of dwellings, churches, schools, public structures, and other places of public gatherings.
5. The probable effect of the proposed use upon the peaceful enjoyment of people in their homes.
6. Facilities for sewers, water, schools, transportation, and other services, and the ability of the County to supply such services.

7. The limitations of fire-fighting and rescue equipment, and the means of access for fire and police protection.
8. The preservation of cultural and historic landmarks and trees.
9. The probable effect of noise, vibration, smoke and particulate matter, toxic matter, odorous matter, fire and explosion hazards, or glare upon the uses of surrounding properties.
10. The purpose and intent of this Ordinance as set forth in its other sections.
11. The most appropriate use of land and structure.
12. The conservation of property values.
13. The contribution, if any, such proposed use, building or addition would make toward the deterioration of areas and neighborhoods.
*5297 Pulaski Highway*, 69 Md.App. at 597–98, 519 A.2d at 210.

**30.** *See* Cramp Affidavit ¶ 6; Hutchison Affidavit ¶ 4.

Master Plan (§ 27–317(a)(3)); "adversely affect" health, safety and welfare (§ 27–317(a)(4)); and be "detrimental" to the general neighborhood (§ 27–317(a)(5)). Those criteria are subject to possible manipulation and arbitrary application by officials who might object to the contents of the materials sold at adult bookstores. While such standards may be acceptable in the zoning of facilities such as a funeral home, *Schultz, supra*, they do not pass muster when they potentially restrict the location of bookstores, particularly when the legislation is enacted with as little supporting evidence as occurred in this instance. Such standards suffer from the same broad, subjective criteria which courts have found constitutionally wanting in *15192 Thirteen Mile Rd.*, 593 F.Supp. at 186, and in *Amico*, 571 F.Supp. at 173, and are much more general than the specific criteria found constitutional by the Court of Special Appeals of Maryland in *5297 Pulaski Highway*, 69 Md.App. at 599–600. In essence, the County bookstore regulations leave the permit process "open to the kind of arbitrary application that [the Supreme] Court has condemned as inherently inconsistent with a valid time, place and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 649, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981).[31] Accordingly, the County's special exception provisions, as applied to adult bookstores, constitute an unconstitutional prior restraint.

### VI. *Conclusion*

The County's adult bookstore zoning provisions set forth in sections 27–107.1(a)(6), 27–248 and 27–331 are unconstitutional because they were enacted by the County Council without sufficient evidence to support the County's assertion of a "substantial interest" in regulating adult bookstores. The special exception provisions in section 27–317 are unconstitutional, as applied to adult bookstores, because they grant overbroad discretion to zoning officials in a First Amendment context. Accordingly, this Court will enter an order granting judgment for plaintiff and declaring the County's zoning legislation unconstitutional to the limited extent set forth in this Part VI.

Section 27–106 of the Zoning Ordinance of Prince George's County contains the following severability provision:

Should any provision of the Zoning Ordinance be decided by the courts to be unconstitutional or invalid, that decision

**31.** In addition to its other contentions, plaintiff asserts that the affidavits of Barry Cramp and Dale Hutchison indicate that the applicant for a special exception faces a potentially lengthy bureaucratic process, even before reaching the hearing examiner. A "lack of time limits ... and ... indefinite general standards guiding ... discretion, raise the possibility that local officials could effectively prohibit any adult entertainment facility." *15192 Thirteen Mile Rd.*, 593 F.Supp. at 156.

Neither the County nor plaintiff has submitted any rules or regulations which establish time limits with regard to the special exception permit process. The affidavits of Cramp and Hutchison, two officials who are extensively involved in the special exception process, do throw light on that subject. Mr. Hutchison has outlined that process in his second affidavit and has concluded that the special exception process today normally takes about *six months* from the date of application to the date of the Zoning Hearing Examiner's decision. "For existing adult bookstores, I am aware that they have been allowed to continue their operations while they sought extensions of time or special exception approvals from the Board of Appeals and Planning Board." Second Hutchison Affidavit ¶ 6. Mr. Cramp's affidavit, describing the same process, states that a public hearing is usually held within six months of the date on which the application is filed. Second Cramp Affidavit ¶ 5(e).

Plaintiff has not submitted any evidence to rebut those assertions of Messrs. Hutchison and Cramp. Plaintiff has not shown that the application process for adult bookstores has generally taken longer than six months, or that adult bookstore applicants have been treated in a manner different from other classes of special exception applicants, or that six months—or one year—is an unreasonable time for processing an application. While the apparent lack of statutory time constraints is somewhat troublesome, the length of the process in and of itself would not appear to constitute a prior restraint in the light of the uncontested Cramp and Hutchison affidavits—particularly in view of Mr. Hutchison's statement that adult bookstores continue to operate while a special exception application is reviewed. Second Hutchison Affidavit ¶ 6(i).

shall not affect the validity of the Ordinance other than the part decided to be unconstitutional or invalid.

A similar severability clause was included in section 8 of Council Bill 156–1975, section 2 of Council Bill 10–1976, and section 9 of Council Bill 104–1976. Such a clause is valid in this case since (1) "the presence of a severability clause ... reinforces the presumption that a legislative body would have intended to enact the valid provisions of a statute"; (2) "the dominant purpose of [the Zoning Ordinance] may largely be carried out notwithstanding the statute's partial invalidity"; and (3) the severing of the offending statutory provisions would not appear to "impose ... a substantial hardship" on persons not operating adult bookstores. *O.C. Taxpayers For Equal Rights, Inc. v. Ocean City*, 280 Md. 585, 601, 375 A.2d 541, 550 (1977). Therefore, it is only sections 27–107.1(a)(6), 27–248 and 27–331 which are being declared in this case to be unconstitutional *in toto*. As to section 27–317, it is being declared in this case to be unconstitutional only as applied to adult bookstores.

### ORDER

(1) Judgment is hereby entered for plaintiff.

(2) Sections 27–107.1(a)(6), 27–248, and 27–331 of the Zoning Ordinance of Prince George's County are hereby declared unconstitutional as violative of the First Amendment.

(3) Section 27–317 of the Zoning Ordinance of Prince George's County is hereby declared unconstitutional as violative of the First Amendment as applied to adult bookstores but only as applied to adult bookstores.

(4) The Clerk is directed to mail copies of this Order and of the opinion filed today in this case to counsel of record.